### In re ESTATE OF James Donald LOVELESS, Deceased.

#### No. 06-00-00057-CV.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 8, 2001.

Decided Dec. 7, 2001.

---

**568**

Robert D. Bennett, Robert D. Bennett & Associates, PC, Gilmer, James W. Wallace Jr., Attorney At Law, Pittsburg, for appellant.

James R. Dunnam, Thomas C. West, Dunnam & Dunnam, LLP, Waco, Allen D. Place Jr., Attorney At Law, Gatesville, Kirk T. Garner, Attorney At Law, Winnsboro, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Rosa Loveless appeals the summary judgment granted in favor of Wanda Loveless in an action to determine the heirs of James Donald Loveless, who died intestate in a traffic accident. Rosa filed an application to determine heirship in which she claimed she was married to James at the time of his death. Wanda filed a counter-application to determine heirship in which she claimed that Rosa was divorced from James in April 1990 and that she and James were married in July 1995.

The case was transferred from the County Court of Franklin County to the Eighth Judicial District Court to resolve this issue.[1] *See* TEX. PROB. CODE ANN. § 5(b) (Vernon Supp.2002). Rosa moved for summary judgment, but later withdrew her motion. Wanda also moved for summary judgment under TEX. R. CIV. P. 166a(b), (i). The trial court granted Wanda's motion.

Rosa contends the trial court erred in granting summary judgment because (1) much of Wanda's summary judgment proof was inadmissible, making the evidence insufficient to support the summary judg-

---

1. TEX. PROB. CODE ANN. § 5(b) (Vernon Supp.2002) provides in part:

 In those counties in which there is no statutory probate court, county court at law, or other statutory court exercising the jurisdiction of a probate court, all applications, petitions, and motions regarding probate and administrations shall be filed and heard in the county court, except that in contested probate matters, the judge of the county court may ... transfer the contested portion of the proceeding to the district court, which may then hear contested matter as if originally filed in district court.

ment; (2) Rosa's evidence raises a genuine issue of material fact; (3) Wanda lacked standing to raise an estoppel defense; and (4) Wanda failed to address the issue of a common-law marriage.

 Though neither party raises the issue, we must first address our jurisdiction to consider this appeal.[2] The general rule is that an appeal may be taken only from a final judgment. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001). In general, a judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, though an order in a probate case that does not dispose of all pending parties and claims may also be final for purposes of appeal in some instances. *Id.*

In *Estate of Wright*, 676 S.W.2d 161, 162 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.), the appellants filed petitions for declaration of heirship after the appellee was granted letters of administration for the decedent's estate. The trial court granted the appellants' motions for summary judgment, and the appellee did not appeal. *Id.* at 163. Some time later, the appellee filed a motion for rehearing of the summary judgment, and the trial court reversed its previous decision. *Id.* On appeal, the appellants contended the trial court had no jurisdiction to reverse its previously granted summary judgment because it was a final judgment. *Id.* The court of appeals held the trial court's initial summary judgment was final because it fully adjudicated the heirship rights of all the parties. *Id.* at 164.

In *Crowson v. Wakeham*, 897 S.W.2d 779, 780 (Tex.1995), the appellant contended she was the decedent's common-law wife. The appellees intervened, claiming they were the decedent's relatives and challenging the appellant's contention. *Id.*

at 780–81. The appellees moved for summary judgment based on deemed admissions that the appellant was not the decedent's common-law wife. *Id.* at 781. The trial court granted the appellees' motion for summary judgment and two months later severed the partial summary judgment from the appellees' other heirship claims. *Id.*

Relying on *Wright*, the court of appeals held that the order granting summary judgment adjudicated all of the appellant's substantial rights. *Id.* at 781 n. 2. Therefore, the court held the severance order was unnecessary to make the order appealable and the appellant's notice of appeal was untimely. *Id.* at 781–82.

In reversing, the Texas Supreme Court noted that, in determining whether an order is appealable, it is important that a party's substantial rights be adjudicated, as the court of appeals held. *Id.* at 782–83. However, the Texas Supreme Court also concluded that of equal importance is the requirement that the order dispose of all issues in the phase of the proceeding for which it was brought. *Id.* at 783. The court went on to outline the following standard for determining finality of an order in a probate case:

> If there is an express statute, such as the one for the complete heirship judgment [*see* TEX. PROB. CODE ANN. §§ 54, 55(a) (Vernon 1980) ], declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory. For appellate purposes, it

---

**2.** We asked the parties by letter to address the

finality of the judgment at oral argument.

may be made final by a severance order, if it meets the severance criteria . . . .

*Id.* The Texas Supreme Court held the summary judgment was interlocutory until it was severed because it did not dispose of the appellees' heirship claims. *Id.* at 782–83.

This case is governed by the first part of the test outlined in *Crowson* because there is an express statute governing heirship proceedings. Section 54 of the Probate Code requires that a judgment in a proceeding to determine heirship declare the names and places of residence of the decedent's heirs, and their respective shares and interests in the decedent's real and personal property. TEX. PROB. CODE ANN. § 54 (Vernon 1980). Such a judgment is final and may be appealed within the same time limits and in the same manner as other judgments in probate matters. TEX. PROB. CODE ANN. § 55(a) (Vernon 1980).

■ The judgment in the present case adjudicates Rosa's and Wanda's heirship claims by declaring Wanda as James' heir and sole surviving spouse. The judgment further recites:

> [T]his matter was transferred pursuant to Section 5 of the Texas Probate Code from the Franklin County Court for this Court to determine and resolve disputes between WANDA LOVELESS . . . and ROSA LOVELESS regarding each's claim to be the sole surviving spouse of JAMES DONALD LOVELESS, Deceased. As this judgment resolves all of those issues in favor of WANDA LOVELESS . . . and against ROSA LOVELESS, the Court ORDERS that this Judgment be referred back to the Franklin County Court for further proceedings not inconsistent with this Court's rulings and findings contained herein.

It does not declare the names and places of residence of James' heirs, and their respective shares and interests in James' real and personal property, as Section 54 requires. Wanda's own pleadings demonstrate there are other potential heirs at issue in this case. Therefore, this is not a final judgment.

This case is more like *Crowson* than *Wright.* In *Crowson,* the judgment did not adjudicate the appellees' heirship claims; therefore, it was not final. *Crowson,* 897 S.W.2d at 782–83. In *Wright,* the judgment specified the names of the decedent's heirs and their respective shares of her estate. *Wright,* 676 S.W.2d at 163–64.

Arguably, *Crowson* is distinguishable from the present case in that here the only parties were Wanda and Rosa; the other purported heirs did not intervene, as they did in *Crowson.* Further, these proceedings were separate and distinct, and intended to resolve only Wanda's and Rosa's competing claims. These are distinctions without difference in light of *Crowson* 's requirement that the statute governing the heirship judgment controls its finality. That statute requires an heirship judgment to declare the names and places of residence of the decedent's heirs, and their respective shares and interests in the decedent's real and personal property. TEX. PROB. CODE ANN. § 54.

In any event, even under the second part of the *Crowson* test, the judgment is interlocutory. The second part of the *Crowson* test requires that, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory. The order in the present case may logically be considered a part of the proceeding to determine all of James' heirs, and Wanda's pleadings identify oth-

er heirs, the rights of whom the judgment does not address.

■ Neither party has contested the finality of the judgment, and both sides contended at oral argument the judgment is final. Because this action meets the requirements for severance, *see Liberty Nat'l Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 629 (Tex.1996), and in the interest of judicial efficiency, we sever this action from the probate action in the County Court of Franklin County.

■ We now turn to the merits of Rosa's appeal. In her motion for summary judgment, Wanda alleged the following: James was married to Rosa from 1979 to 1990; this marriage ended by decree of divorce on June 1, 1990; under the terms of the divorce decree, James was responsible for paying child support, and did so until his death; and Wanda married James in 1995.

In 1992, Rosa filed a motion to enforce the divorce decree, to increase child support, and to obtain permission to change the child's school and residence. In the course of that proceeding, James filed a statement with the court in which he referred to Rosa as his "former wife." At a hearing to ratify a settlement agreement in that case, Rosa's attorney referred to James as her "ex-husband," the man "who

was your husband," and her "husband at that time."

In 1993, James was involved in litigation stemming from an automobile accident. In response to an interrogatory requesting his marital status and spouse's name, he responded he was divorced. He also gave a sworn statement in which he stated he was divorced.

On income tax filings with the Internal Revenue Service after their divorce in 1990, Rosa and James both filed as head of household, instead of either married filing jointly or married filing separately. After 1995, Wanda and James began filing a joint return. In a letter to the Texas Board of Pardons and Paroles on Wanda's behalf, James represented that he and Wanda were married.

James and Rosa's son, who lived with Rosa after the 1990 divorce, testified in a deposition in a wrongful death suit arising from James' automobile accident that he always understood and believed his parents were divorced. In addition, James' daughter and his stepmother testified in depositions in the wrongful death suit that James was married to Wanda and divorced from Rosa.

■ In response to Wanda's motion,[3] Rosa produced a Honduran marriage cer-

---

3. The summary judgment proof attached to Rosa's response to Wanda's motion for summary judgment is incompetent because it consists of affidavits which were not signed or notarized. However, there was also competent summary judgment proof attached to Rosa's motion for summary judgment. When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented. *Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). Here, however, Rosa withdrew her motion for sum-

mary judgment from consideration and the trial court did not rule on it.

Nevertheless, at the hearing on Wanda's motion for summary judgment, Rosa requested the trial court take judicial notice of the proof attached to her motion for summary judgment. The trial court took judicial notice of its file. Therefore, the summary judgment proof attached to Rosa's withdrawn motion for summary judgment was before the trial court when it ruled on Wanda's motion for summary judgment. *See Sparkman v. Kimmey,* 970 S.W.2d 654, 659 (Tex.App.-Tyler 1998, pet. denied); *Ingersoll–Rand Co. v. Valero Energy Corp.,* 953 S.W.2d 861, 868 (Tex.App.-Corpus Christi 1997), *rev'd on other*

tificate, accompanied by a sworn translation, showing James and Rosa were married in Honduras on October 2, 1990, four months after their divorce decree was signed. In addition, Rosa produced the affidavit of Elsa Camacho, which stated that James and Rosa were married in Honduras on October 2, 1990, that she attended the ceremony, and that to the best of her knowledge, they were never divorced. Rosa also produced her own affidavit and her deposition testimony from the wrongful death suit, in which she states she and James were remarried in Honduras on October 2, 1990, lived together for about four to six weeks, and then began living apart without obtaining a divorce or annulment. Finally, Rosa produced the affidavit of James Wallace, an attorney, who stated he searched the court records of Franklin County, the county of Rosa's and James' exclusive residences, and found no records indicating James and Rosa were divorced.

■■■ Wanda moved for summary judgment under TEX. R. CIV. P. 166a(b). To prevail on such a motion, the movant must establish there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). Summary judgment for a defendant is proper when such defendant negates at least one element of each of the plaintiff's theories of recovery, or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). We indulge every reasonable inference and resolve any

doubt in the nonmovant's favor. *Id.* On appeal, the movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.*

■■■ Wanda also moved for a no-evidence summary judgment under TEX. R. CIV. P. 166a(i). A party moving for a no-evidence summary judgment does not bear the burden of establishing each element of that party's own claim or defense, as under Rule 166(a) or (b). *Garrett v. L.P. McCuistion Cmty. Hosp.*, 30 S.W.3d 653, 655 (Tex.App.-Texarkana 2000, no pet.). Rather, although the nonmoving party is not required to marshal his or her proof, that party must present evidence that raises a genuine fact issue on the challenged elements of the claims on which the nonmovant would have the burden of proof at trial. *Id.*

■■■ Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard as we apply in reviewing a directed verdict. *Id.* We consider all the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id.* A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

Rosa first contends the trial court erred in granting summary judgment because much of Wanda's summary judgment proof was incompetent. Of course, this argu-

*grounds*, 997 S.W.2d 203 (Tex.1999); *In re A.L.J.*, 929 S.W.2d 467, 472 (Tex.App.-Tyler

1996, writ denied).

ment applies only to Wanda's motion under Rule 166a(b) because, under Rule 166a(i), Wanda was not required to present any summary judgment proof.

Rosa objected to Wanda's summary judgment proof in her response to Wanda's motion for summary judgment. The summary judgment proof at issue includes (1) a copy of James and Wanda's marriage certificate; (2) a copy of James and Rosa's 1990 divorce decree; (3) James' federal income tax returns for 1991 through 1994; (4) James and Wanda's joint federal income tax returns for 1996 and 1997; (5) a copy of James' answers to interrogatories in a 1993 suit arising out of an automobile accident; (6) a copy of a letter James wrote to the Texas Board of Pardons and Paroles; (7) the affidavit of George Simpson showing James' work schedule for October 1990 and stating "no documents have been located showing a variance from the attached work schedule ... or any request for leave or vacation time ... during the month of October 1990"; (8) a copy of the Honduran Family Code; and (9) a translation of that code.

Until recently, it was well settled that the trial court's rulings on objections to summary judgment evidence were required to be express and in writing. *See, e.g., Banowsky v. State Farm Mut. Auto. Ins. Co.,* 876 S.W.2d 509, 513 (Tex.App.-Amarillo 1994, no writ). However, under Rule of Appellate Procedure 33.1(a)(2)(A), which became effective in 1997, a trial court's ruling can be express or implied. TEX. R. APP. P. 33.1(a)(2)(A).

In *Frazier v. Yu,* 987 S.W.2d 607, 610 (Tex.App.-Fort Worth 1999, pet. denied), and *Blum v. Julian,* 977 S.W.2d 819, 823–24 (Tex.App.-Fort Worth 1998, no pet.), the Fort Worth Court of Appeals held the trial court's ruling on the motion for summary judgment constituted an implicit ruling on the objections to the summary judg-

ment proof. In *Well Solutions, Inc. v. Stafford,* 32 S.W.3d 313, 316–17 (Tex.App.-San Antonio 2000, no pet.), however, the San Antonio Court of Appeals concluded a trial court's ruling on a motion for summary judgment implies nothing about its rulings on objections to summary judgment proof.

We agree with the San Antonio court. In a situation such as the one in the present case, where Wanda moved for a regular summary judgment and a no-evidence summary judgment and the trial court did not state the basis for its ruling, we can draw no inference as to the trial court's rulings on Rosa's objections to Wanda's summary judgment proof. This is particularly true when Rosa objected to several of Wanda's exhibits and raised multiple objections to some of those exhibits.

The trial court did not issue a written ruling on Rosa's objections, and the order granting summary judgment did not reflect that the trial court considered her objections. Because Rosa failed to obtain a ruling on her objections, they are waived and Wanda's proof remains part of the summary judgment record. *See Rogers v. Cont'l Airlines, Inc.,* 41 S.W.3d 196, 200 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

Rosa contends her summary judgment proof was sufficient to raise a fact issue on whether she was married to James. A marriage is void if it is entered into when either party has an existing marriage to another person that has not been dissolved by legal action or terminated by the death of the other spouse. TEX. FAM. CODE ANN. § 6.202(a) (Vernon 1998). When two or more marriages of a person to different spouses are alleged, the most recent marriage is presumed to be valid against each marriage that precedes it, until one who asserts the validity of a

previous marriage proves its validity. TEX. FAM. CODE ANN. § 1.102 (Vernon 1998). This presumption is one of the strongest, if not the strongest, known to law. *Texas Employers' Ins. Ass'n v. Elder*, 155 Tex. 27, 282 S.W.2d 371, 373 (1955). The presumption is, in itself, evidence and may even outweigh positive evidence to the contrary. *Id.* The presumption's strength increases with the lapse of time, acknowledgments by the parties to the marriage, and the birth of children. *Id.*

The presumption that the most recent marriage is a valid one continues until a party proves the impediment of a previous marriage and its continuing validity. *Estate of Claveria v. Claveria*, 615 S.W.2d 164, 165 (Tex.1981). The party attacking the validity of a marriage must introduce sufficient evidence, standing alone, to negate the dissolution of the previous marriage. *Wood v. Paulus*, 524 S.W.2d 749, 758 (Tex.Civ.App.-Corpus Christi 1975, writ ref'd n.r.e.). After some evidence of a previous and continuing marriage has been introduced, the weight of such evidence must be determined by the finder of fact. *Claveria*, 615 S.W.2d at 166; *Wood*, 524 S.W.2d at 758.

Therefore, it fell to Rosa, when confronted with Wanda's no-evidence motion for summary judgment, to bring forward some evidence (1) to show she was married to James, and (2) to negate the dissolution of that marriage. *See Loera v. Loera*, 815 S.W.2d 910, 911 (Tex.App.-Corpus Christi 1991, no writ). At the same time, because Wanda moved for regular summary judgment, she had the burden to show that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law.

Wanda relies on the presumption from *Elder*, but *Elder* involved a trial on the merits. This is a summary judgment, in which we take as true all evidence favorable to Rosa and indulge every reasonable inference and resolve any doubt in her favor. *See Simpson v. Simpson*, 380 S.W.2d 855, 859 (Tex.Civ.App.-Dallas 1964, writ ref'd n.r.e.). It is true that the presumption articulated in *Elder* operates as evidence and may even outweigh contrary proof. *Elder*, 282 S.W.2d at 373. However, if Rosa introduced evidence showing the existence of a previous marriage and the marriage was not dissolved, it is for the trier of fact to weigh that evidence. *Claveria*, 615 S.W.2d at 166; *Wood*, 524 S.W.2d at 758.

Rosa contends her affidavit, Camacho's affidavit, and the Honduran marriage certificate are sufficient to raise a fact issue on the question of whether she and James were validly married in 1990. Rosa's affidavit states she was married to James on October 2, 1990. Camacho's affidavit states she attended the wedding. The Honduran marriage certificate shows they were married on October 2, 1990.

Wanda contends the marriage certificate is not a marriage certificate on its face. According to the summary translation, the certificate recites it was expedited on April 13, 1998, almost eight years after James and Rosa were purportedly married. Wanda also observes that the certificate was filled out completely in the same handwriting and does not contain James', Rosa's, or the marriage officiant's signatures. In addition, the translation recites that the "[o]riginal certificate is under number 0233 Page 59 Volume 49 of the year 1990." Wanda contends the document is not a true and correct copy of a 1990 marriage certificate and, even if it is an official document, there is no proper authentication showing what it purports to be.

If Wanda is contending the Honduran marriage certificate is defective summary

judgment proof, then she has waived that contention because she failed to raise an objection in the trial court and obtain a ruling on her objection. TEX. R. APP. P. 33.1(a). Any purported defects in the proof aside, the document appears to be an official document of the Honduran government stating that James and Rosa were married on October 2, 1990. The reliability of the document is a matter to be weighed by the trier of fact. In any event, Rosa's and Camacho's affidavits are sufficient to raise a fact question.

■ Wanda also contends she was entitled to judgment as a matter of law because Rosa's marriage was not a valid marriage under Honduran law. She attached to her motion for summary judgment a copy of the Honduran Family Code, along with a translation of three articles from that code. In her motion for summary judgment, Wanda requested the trial court take judicial notice of these portions of the Honduran code.

A court shall take judicial notice if requested by a party and supplied with the necessary information. TEX. R. EVID. 201(d). A party who intends to raise an issue concerning the law of a foreign country must give written notice and furnish all parties copies of any written materials or sources the party intends to use as proof of the foreign law. TEX. R. EVID. 203. The determination of the laws of a foreign country is a question of law for the trial court. *Id.* Therefore, though the trial court did not explicitly refer to the provisions of Honduran law supplied by Wanda in its order granting summary judgment or at the hearing on her motion, we must presume it took judicial notice of those provisions.

Traditionally, courts have used the law of the place a marriage purportedly occurred to determine the validity of the ceremony. *See, e.g., Braddock v. Taylor,*

592 S.W.2d 40, 42 (Tex.Civ.App.-Beaumont 1979, writ ref'd n.r.e.). In *Seth v. Seth,* 694 S.W.2d 459, 462 (Tex.App.-Fort Worth 1985, no writ), the court of appeals applied choice of law principles to determine the appropriate law. Courts addressing the issue after *Seth* have acknowledged its approach, but have concluded that, under the facts of those particular cases, there would be no difference in the outcome under the law of either forum. *Texas Employers' Ins. Ass'n v. Borum,* 834 S.W.2d 395, 399 n. 2 (Tex.App.-San Antonio 1992, writ denied); *Williams v. Home Indem. Co.,* 722 S.W.2d 786, 788 (Tex.App.-Houston [14th Dist.] 1987, no writ). *But see Husband v. Pierce,* 800 S.W.2d 661, 663–64 (Tex.App.-Tyler 1990, orig. proceeding). Therefore, we must (1) determine whether the marriage was valid under the law of either forum, and (2) if the marriage was invalid under either Honduran law or Texas law, but not both, determine which law governs.

Wanda's summary judgment proof shows that in Honduras "[a] foreigner who seeks to enter into marriage in Honduras ... shall provide certification from the respective diplomatic or consular agent or legal certification from any authorized official of his/her country, that according to the laws that apply, there is no impediment to the proposed marriage." Wanda contends Rosa has made no showing that James obtained the required certification. However, we presume that, if the Honduran government issued a marriage certificate, then James and Rosa complied with the formalities of Honduran law.

Wanda's summary judgment proof also shows that in Honduras it is "prohibited to solemnize the marriage ... of the woman before three hundred days have elapsed, counting from the dissolution of the previous marriage or the *de facto* union, or from when the marriage is declared null, unless

childbirth has occurred within that time period ...." In the present case, James and Rosa were divorced in June 1990; their purported remarriage occurred in October 1990, less than 300 days after their divorce. Therefore, under the Honduran statutes provided by Wanda, Rosa did not have the capacity to enter into the marriage. However, Wanda was not entitled to summary judgment because she did not show, as a matter of Honduran law, this deficiency made the marriage void, rather than voidable.

■■■ Under Texas law, in order to establish a valid marriage, the parties must possess legal capacity to marry and there must not be any legal impediment prohibiting the marriage contract. *Franklin v. Smalldridge,* 616 S.W.2d 655, 657 (Tex.Civ.App.-Corpus Christi 1981, no writ). There is no allegation or evidence that James and Rosa were prohibited from marrying by age, mental capacity, or a previous existing marriage. Even if it was alleged that they failed to comply with the formalities involved in obtaining a marriage license, the failure to comply with these formalities does not render the marriage invalid unless a statute declares it so. *Williams v. White,* 263 S.W.2d 666, 668 (Tex.Civ.App.-Austin 1953, writ ref'd n.r.e.). Therefore, under Texas law, Wanda failed to show James and Rosa's purported marriage was invalid as a matter of law.

■■■ Rosa also contends her affidavit and Wallace's affidavit were sufficient to create a fact issue on the question of whether her purported marriage to James was ever dissolved. Wanda contends Wallace's affidavit is insufficient because it fails to negate the possibility that James and Rosa's purported marriage was dissolved by annulment. We agree. In his affidavit, Wallace states he searched the court records of Franklin County, the county of Rosa's and James' exclusive residences, and found no records indicating James and Rosa were divorced, but he does not discuss the possibility that their marriage was annulled.

Further, while Rosa did not have to present evidence showing the nonexistence of a divorce or annulment in every jurisdiction where such proceedings could have been possible, she did have to show the nonexistence of a divorce or annulment in jurisdictions where she or James might reasonably have been expected to pursue them. *See Davis v. Davis,* 521 S.W.2d 603, 605 (Tex.1975). In her deposition in the wrongful death suit arising from James' automobile accident, Rosa testified that she and James were married in Honduras each time they were married and that she frequently visited her parents there. Therefore, Honduras is a jurisdiction in which either Rosa or James could be expected to obtain a divorce or annulment, and Rosa failed to show that her purported marriage to James was not dissolved in Honduras.

The only other summary judgment proof addressing whether James and Rosa's purported marriage was dissolved was Rosa's affidavit, in which she stated the marriage was not dissolved by divorce or annulment. Because Rosa's affidavit forecloses the existence of a divorce or annulment granted in any jurisdiction, it is some evidence, in the context of a summary judgment proceeding, that her purported marriage to James was not dissolved.

■■■ Arguably, Rosa's affidavit is not readily controvertible because it would require searching in every jurisdiction in which a divorce or annulment could be granted. However, summary judgment evidence is readily controvertible if it "could have been effectively countered by opposing evidence." *Trico Techs. Corp. v.*

*Montiel*, 949 S.W.2d 308, 310 (Tex.1997). This does not mean the evidence could have been easily and conveniently rebutted. *Id.* If controverting evidence exists, it is most likely discoverable in the jurisdictions in which James and Rosa lived, traveled, and frequently transacted business.

In any event, Wanda did not object to Rosa's affidavit in the trial court or before this Court. Any defect in the form or substance of the affidavit is waived, and the evidence was before the trial court when it ruled on the motion for summary judgment. *See* TEX. R. APP. P. 33.1(a).

Wanda also contends that, in Rosa's deposition in the wrongful death suit arising from James' automobile accident, she refused to deny her marriage to James was annulled. The testimony was:

Q. Did you ever have your second marriage to Mr. Loveless annulled?

A. What do you mean?

Q. Well, you would know the term. Did you ever go through any formal proceeding to have that second marriage nullified?

A. I don't understand that.

Q. You didn't get a divorce on the second marriage?

A. My second, no.

Q. Okay. Did you have any sort of proceeding at all, any sort of official proceeding at all to nullify that second divorce?

A. I didn't have a second divorce.

Reviewing this testimony in the light most favorable to Rosa, we conclude it does not constitute a refusal to deny the existence of an annulment. Rather, Rosa repeatedly said she did not understand the question, and when given the opportunity to restate, counsel asked whether she had an official proceeding to nullify the "second divorce." Even if there was a conflict between Rosa's deposition testimony and her affidavit, this conflict would, in most cases, be sufficient to create a fact issue on whether the marriage was annulled. *See, e.g., Cantu v. Peacher*, 53 S.W.3d 5, 8–11 (Tex.App.-San Antonio 2001, pet. denied) (general discussion of effect in summary judgment context of conflicts between witness' deposition and affidavit).

Therefore, because Rosa presented some evidence she and James were married in October 1990 and the marriage was never dissolved, Wanda was not entitled to summary judgment. In addition, because Wanda failed to establish that James and Rosa's purported marriage was invalid as a matter of law under either Honduran or Texas law, she was not entitled to summary judgment.

Wanda also moved for summary judgment on the basis that Rosa was equitably and judicially estopped from claiming she was married to James in October 1990 because she sued James in 1992 to enforce their June 1990 divorce decree. Rosa contends Wanda lacks standing or privity to assert these claims.

The doctrine of judicial estoppel is sometimes confused with equitable estoppel arising from inconsistent positions taken in judicial proceedings.[4] 34 TEX. JUR. 3D *Estoppel* § 20 (1984). The elements of equitable estoppel arising from inconsis-

---

4. Judicial estoppel is also sometimes confused with estoppel by record, which is defined as the preclusion to deny the truth of a matter set forth in a judicial or legislative record, and to deny the facts adjudicated by a court of competent jurisdiction. *See* 31 C.J.S. *Estoppel and Waiver* § 5 (1996); *see also Woodard v. Southwest States, Inc.*, 384 S.W.2d 674 (Tex.1964); *In re Estate of Bills*, 542 S.W.2d 943, 946 (Tex.Civ.App.-Texarkana 1976, writ ref'd n.r.e.); *Alexander v. Clower*, 486 S.W.2d 189, 192 (Tex.Civ.App.-Tyler 1972, no writ).

tent positions taken in judicial proceedings are (1) a party takes clearly inconsistent positions in the same or separate proceedings; (2) the position first asserted was successfully maintained or upheld; (3) the other party relied on the position first asserted; (4) adoption of the later position would result in injury or prejudice to the adverse party; and (5) where more than one action is involved, there is an identity of parties. *See Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292 (1956); *Smith v. Chipley,* 118 Tex. 415, 16 S.W.2d 269, 275–76 (1929); *Washburn v. Associated Indem. Corp.,* 721 S.W.2d 928, 932–33 (Tex.App.-Dallas 1986), *writ ref'd n.r.e.,* 735 S.W.2d 243 (Tex.1987) (per curiam); *see also* 34 TEX. JUR. 3D *Estoppel* § 19 (1984).

▬▬▬ The doctrine of judicial estoppel is not strictly speaking estoppel at all, but arises from positive rules of procedure based on justice and sound public policy. *Long,* 291 S.W.2d at 295; *Huckin v. Connor,* 928 S.W.2d 180, 182 (Tex.App.-Houston [14th Dist.] 1996, writ denied). Its purpose is to prevent fraud and to uphold the integrity of the judicial process. *In re Estate of Huff,* 15 S.W.3d 301, 308–09 (Tex.App.-Texarkana 2000, no pet.).

▬▬▬ Judicial estoppel is distinct from equitable estoppel arising from inconsistent positions in judicial proceedings because the elements of reliance and injury essential to equitable estoppel need not be present. *Long,* 291 S.W.2d at 295; *Huckin,* 928 S.W.2d at 182. In addition, equitable estoppel arises only in favor of the parties to the first suit and those in privity with them, while judicial estoppel may be invoked by a stranger to the original proceeding. *Swilley v. McCain,* 374 S.W.2d 871, 875 (Tex.1964); *Long,* 291 S.W.2d at 295.

▬▬▬ Judicial estoppel bars a party who has made a sworn statement in a pleading, a deposition, oral testimony, or affidavit in a judicial proceeding from maintaining a contrary position in a subsequent proceeding. *Huff,* 15 S.W.3d at 308. The elements of judicial estoppel are: (1) a sworn, inconsistent statement made in a previous judicial proceeding; (2) the party who made the statement successfully maintained the previous position; (3) the previous statement was not made inadvertently or by mistake, fraud, or duress; and (4) the statement was deliberate, clear, and unequivocal. *Id.* at 309.

Wanda contends equitable estoppel applies because she is in privity with James as his heir. However, she had not been adjudicated his heir at the time the trial court considered her motion for summary judgment. Indeed, if the facts show James and Rosa's purported marriage was valid and continuing, then Wanda's marriage to James would be invalid. *See* TEX. FAM. CODE ANN. § 6.202(a). Therefore, Wanda was not entitled to summary judgment on her equitable estoppel defense.

Wanda also contends judicial estoppel applies because, in a hearing to prove the settlement agreement in Rosa's suit to enforce the 1990 divorce decree, Rosa swore she was James' former wife. The testimony at issue was:

Q Is it true there were past income taxes due for the tax period ending December 31, 1989, against you and *your husband at that time?*

A Yes.

Q In the divorce decree Mr. James Loveless, *who was your husband,* was adjudged in that divorce decree to be responsible for those taxes?

A Yes.

Q And since that time you have paid those taxes?

A Yes, sir.

Q Here today *with your husband, ex-husband,* you have come to an agreement that he's going to pay you seven hundred dollars toward those taxes and that will be paid in full?

A Yes.

(Emphasis added.)

Rosa contends this testimony is ambiguous on the issue of whether she was asserting James was her former husband. She contends her answers were in response to the question asked and not to the characterizations of her attorney that James was her "husband at that time" and her "ex-husband." She contends that, because this is a summary judgment, we must indulge every reasonable inference and resolve any doubt in her favor.

■ As mentioned previously, for judicial estoppel to apply, the statement must be deliberate, clear, and unequivocal. *Am. Sav. & Loan Ass'n v. Musick,* 531 S.W.2d 581, 589 (Tex.1975). We are not confronted here by such a statement; rather, assuming James and Rosa were remarried in October 1990, we are confronted by Rosa's failure to correct a misstatement by her attorney. Equitable estoppel by silence can occur when a party is under a duty to speak but refrains and another party is led to believe in the existence of facts and relies on his or her belief to that party's detriment. *Smith v. Nat'l Resort Cmtys., Inc.,* 585 S.W.2d 655, 658 (Tex.1979); *In re Moragas,* 972 S.W.2d 86, 91 (Tex.App.-Texarkana 1998, no pet.). But we are aware of no authority that would predicate judicial estoppel on a party's failure to speak.

There is a line of Texas cases holding that, if a party takes an affirmative position in a proceeding and is successful in having the court adopt its position, that party may be judicially estopped from later taking an inconsistent position in that or in another proceeding, even though the previous position does not consist of a sworn declaration. *Zipp Indus., Inc. v. Ranger Ins. Co.,* 39 S.W.3d 658, 665 (Tex.App.-Amarillo 2001, no pet.); *see also Thompson v. Cont'l Airlines,* 18 S.W.3d 701, 703–04 (Tex.App.-San Antonio 2000, no pet.); *Stewart v. Hardie,* 978 S.W.2d 203, 208 (Tex.App.-Fort Worth 1998, pet. denied); *Andrews v. Diamond, Rash, Leslie & Smith,* 959 S.W.2d 646, 649–50 (Tex.App.-El Paso 1997, writ denied). These cases all involve judicial estoppel invoked by defendants against plaintiffs who failed to list causes of action as potential assets in previous bankruptcy actions. The courts in those cases applied Fifth Circuit precedent rather than Texas law in order to "promote the goal of uniformity and predictability in bankruptcy proceedings." *Andrews,* 959 S.W.2d at 649 n. 1.

Even if we were inclined to apply the federal judicial estoppel doctrine to the facts of this case, there is no consensus approach to judicial estoppel among the federal circuits. Two circuits do not recognize the doctrine. *See United States v. 162 Megamania Gambling Devices,* 231 F.3d 713, 726 (10th Cir.2000); *Konstantinidis v. Chen,* 626 F.2d 933, 938 (D.C.Cir. 1980). The Eleventh Circuit requires that the inconsistent position be made under oath in a previous proceeding and that the inconsistency be shown to have made a mockery of the judicial system. *Salomon Smith Barney, Inc. v. Harvey,* 260 F.3d 1302, 1308 (11th Cir.2001). The Third Circuit requires (1) that the party took irreconcilably inconsistent positions, (2) that the party acted with the intent to "play fast and loose with the court," and (3) that the trial court tailor the application of judicial estoppel to address the harm identified, if no lesser sanction would adequately remedy the misconduct. *Montrose Med. Group Participating Sav. Plan v. Bulger,* 243 F.3d 773, 779–80 (3d Cir.2001).

Among the federal circuits applying approaches similar to the Fifth Circuit, two circuits would not apply judicial estoppel when, as here, the first position was taken in the context of a settlement, even where the settlement was incorporated into an agreed order. *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir.1997); *Teledyne Indus., Inc. v. Nat'l Labor Relations Bd.*, 911 F.2d 1214, 1219 (6th Cir.1990). Two other circuits apply judicial estoppel even when the previous inconsistent position occurred in the context of a settlement. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996); *Kale v. Obuchowski*, 985 F.2d 360, 361–62 (7th Cir.1993). Our research reveals no Second, Fourth, or Fifth Circuit cases addressing the application of judicial estoppel when the previous inconsistent position occurs in the context of a settlement.

Nevertheless, Texas Supreme Court precedent is clear that in Texas, judicial estoppel requires a sworn inconsistent statement, made in a previous judicial proceeding, and that the statement was deliberate, clear, and unequivocal. *See Miller v. Gann*, 842 S.W.2d 641, 641 (Tex.1992) (holding judicial estoppel applies with equal force to any sworn statement whether oral or written); *Musick*, 531 S.W.2d at 589 (holding one of the requirements for application of judicial estoppel is statement must be deliberate, clear, and unequivocal). Though Rosa's position in this litigation is at odds with her position in the 1992 enforcement action, Wanda has not produced a deliberate, clear, unequivocal sworn statement from Rosa in the 1992 action that would judicially estop her from asserting she and James were remarried in October 1990. Therefore, Wanda was not entitled to summary judgment on her claim of judicial estoppel.

Rosa contends Wanda was not entitled to summary judgment because she failed to address whether she and James had an informal marriage. To prove the existence of an informal marriage, a person must show (1) the couple agreed to be married, (2) after the agreement they lived together in this state as husband and wife, and (3) they represented to others they were married. TEX. FAM. CODE ANN. § 2.401(a)(2) (Vernon 1998).

Rosa acknowledges she did not produce summary judgment evidence showing she and James "represented to others that they were married." She asserts, however, that Wanda had the burden to produce this evidence. However, as stated previously, Rosa had the burden to show the existence of a valid marriage. Because she did not produce evidence showing she and James represented to others they were married, she failed to show their purported marriage was valid on the theory that it complied with the requirements for an informal marriage.

Nonetheless, we have already concluded Wanda was not entitled to summary judgment because (1) Rosa presented some evidence she and James were married in October 1990 and the marriage was never dissolved; (2) Wanda failed to establish James and Rosa's purported marriage was invalid as a matter of law under either Honduran or Texas law; and (3) Wanda failed to show she was entitled to judgment as a matter of law on her estoppel claims.

We reverse the trial court's judgment and remand the case to the Eighth Judicial District Court for further proceedings.