COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-04-301-CV

 

 

DONNA RALLS
PIKE                                                             APPELLANT

 

                                                   V.

 

ESTATE OF
BOBBY NEIL PIKE                                                  APPELLEE

 

                                              ------------

 

          FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








This appeal is from
an heirship proceeding concerning the estate of an asbestos plaintiff whose
executor holds about $140,000 in settlement proceeds pending the resolution of
one basic issue:  Who, if anyone, was the
lawful wife of Bobby Neil Pike at his time of death?  Because we hold as a matter of law that Bobby=s estate failed to meet its burden of proving that the
marriage between Bobby and Lawanna[2]
Gay Pike had not been dissolved at the time of his death, we remand this case
to the trial court for proceedings consistent with this opinion. 








By the time of
trial, Lawanna had also died.  Bobby and
Lawanna=s son, Robby; Bobby=s
niece, Judy; and Appellant Donna Ralls Pike testified.  The evidence showed the following.  Bobby and Lawanna got married in 1954 and
formally divorced in 1979.  After the
divorce, but also in 1979, Bobby moved back into the marital home, which had
been awarded to Lawanna as her separate property in the divorce decree.  In 1981 or 1982, the home sustained flood
damage.  Bobby and Lawanna moved into an
apartment together while repairs were made. 
Bobby remodeled the house after the flood, leaving just one master
bedroom.  Bobby and Lawanna took out an
SBA loan to finance the remodeling. 
After another flood caused minor damage a few years later, Bobby and
Lawanna stayed at the Wayfarer Motel together while repairs were made. Judy,
who lived across the street, had a close relationship with Bobby, and took care
of him when he got cancer, answered yes to the question, AAnd did they, from that point on for some period of
time, cohabit or live together B?@ The trial court admitted pictures and testimony
without objection that showed that in the 1980s, Bobby and Lawanna went
motorcycle riding with another couple, Wolf, and his wife, Ann, and that in the
late 1980s and early 1990s, Bobby and Lawanna possessed a dog together,
Pappy.  A letter dated October 2, 1989,
from the couple=s son, Randy, contained the salutation, ADear Mom, Dad, Danny, and Pappy.@  The envelope
was addressed to Bobby at the home that he and Lawanna shared.

At various points,
three of their four grown sons lived in the home with them after the formal
divorce:  Robby, in 1980 or 1981, Danny,
who lived with them most of his life (he died in 2001, after his father but
before his mother), and Randy, who was living with them when he died in October
1990.  Bobby and Lawanna attended Randy=s funeral together.








Lawanna, whose last
name had been changed back to her maiden name of Gay in the divorce decree,
nevertheless went by APike@ during the
period from 1979 until Bobby moved out more than ten years later.  Various insurance documents admitted into
evidence, coupled with Robby=s testimony,
showed that (1) Lawanna and Bobby were named as the insureds for the period of
December 15, 1986 through June 15, 1987 for the car that she drove, (2) Lawanna
was listed as the insured for the periods of June 15, 1987 through December 15,
1987 and December 18, 1988 through June 18, 1989 for the Ford truck that Bobby
drove, and (3) the homeowners= policy with
Texas Farmers Insurance Company for the home, effective November 7, 1990
through November 7, 1992, insured ABOBBY
PIKE AND WIFE LAWANNA.@  In 1991,
Lawanna signed a special power of attorney as Lawanna Gay Pike.  Judy also testified that Lawanna went by APike@ after Bobby
moved back home.  Donna testified that
the name on Lawanna=s driver=s
license was Lawanna Gay.    Robby
testified that his parents had a reputation for living as if they had never
divorced and that they acted like a married couple.  They held themselves out as a married couple and interacted with
other family members as a couple during holidays and all through the year.  Judy also testified that Bobby and Lawanna
had a reputation among family members and in the community for being a married
couple from 1979, when they began living together again, until he moved out in
the early 1990s.

At one point in the
late 1980s or early 1990s, Lawanna got addicted to prescription drugs, and
Bobby threatened a lawsuit against the doctor. 
When Lawanna got sick, Bobby took care of her.  The two continued to live together until sometime between 1990
and 1993, when Lawanna kicked Bobby out of the house.  Finally, in the mid-1990s, Lawanna moved out of the house into a
nursing home.  Bobby went to court, got
a quitclaim deed, and sold the house a year or two later.








After Bobby left
the home that he and Lawanna had shared, he began living with Donna two streets
away.  He left Wichita Falls with her
and lived in Stoneburg with her for a time. 
In Stoneburg, Bobby and Donna bought a house together.  The warranty deed shows that the house was
sold to them as husband and wife:  ABobby N. Pike et ux. Donna G. Pike.@  They both
signed the deed transferring the property when they sold it.  Donna testified that she went by ADonna Ralls Pike@
and ADonna Gaylene Ralls@
during the time that she cohabited with Bobby and that their relationship was
sexual.  She also testified that they
both held themselves out as married to each other.  At some point, they moved back to Wichita Falls, but she lived at
a different address. He visited Lawanna in the nursing home, and his niece,
Judy, joined Donna in taking care of him during the last years of his life.








In the asbestos
lawsuit filed on Bobby=s behalf, Donna was named as a party.  Bobby=s
answers to the interrogatories provided that he was currently married to Donna
G. Rawls, that she was his common-law wife, and that Lawanna was his prior
wife.  Judy testified that Bobby
testified in his asbestos deposition, taken sometime within a month of his
death, that Lawanna was his wife.  Donna
contended that there had been no deposition, just a Aday-in-the-life@
video, and that no one had asked him any questions while the video was being
created.  There was also evidence that
Bobby=s mental capacity was lacking toward the end of his
life.

Donna testified
that Bobby was wearing the wedding ring that she gave him when he died.  At the time of Bobby=s death, Donna was the beneficiary of his burial
policy.  The obituary in the newspaper
listed Donna as Bobby=s wife.  Robby
testified that he agreed to this compromise because he did not want Donna=s sons listed as Bobby=s sons and because he did not want his father=s funeral to turn into a circus.

After Bobby=s death, Lawanna applied for and drew social security
survivor benefits as Bobby=s widow and a
small pension from his former employer until her death in December 2001.  Donna did not attempt to claim survivor
benefits as Bobby=s widow.

The trial court
found:

(1)    Bobby . . . and Lawanna . . . were married
in 1954.

 

(2)    Bobby . . . and Lawanna . . . had four
children born of this marriage, to wit: 
Robby Paul Pike, Bobby Donald [Donnie] Pike, Danny Pike[,] and Randy
Pike.

 

(3)    Bobby . . . and Lawanna . . . formally
divorced on February 19, 1979.

 

(4)    Sometime during 1979, Bobby . . . moved back
in to the home on 33rd Street in Wichita Falls, Texas, with Lawanna
. . . and again began cohabiting with her.

 








(5)    Bobby . . . and Lawanna . . . lived together
continuously until sometime in 1990, at which time they separated.

 

(6)    During such period from 1979 until sometime
in 1990, Bobby . . . and Lawanna . . . lived together as husband and wife, they
agreed to be married, and they represented to others that they were married.

 

(7)    Although Bobby . . . and Lawanna . . .
separated in 1990, they never took the required procedural steps to formally
dissolve their marriage.

 

. . . . 

 

(9)    Bobby . . . died intestate on March 6, 2001.

 

The trial court entered the
following conclusions of law:

 

(1)    On March 6, 2001, at the time of Bobby[>]s . . . death, Bobby . . . and Lawanna . . . were
married as the result of a common-law marriage which was never formally
terminated.

 

(2)    Bobby[>]s
. . . heirs are:  wife, Lawanna Jean
Pike, son Robby Paul Pike, son Bobby Donald Pike, son Danny Pike[,] and
grandson, Samuel Fleming.

 

In her first three
issues, which she argues together, Donna contends that the trial court erred by
concluding that Lawanna and Bobby had a common-law marriage at the time of his
death and challenges the legal and factual sufficiency of the evidence to
support the trial court=s findings of fact numbered (4) through (7).

The Texas Family
Code provides the following presumption,








When two or more
marriages of a person to different spouses are alleged, the most recent
marriage is presumed to be valid as against each marriage that precedes the
most recent marriage until one who asserts the validity of a prior marriage
proves the validity of the prior marriage.[3]

 

As the Dallas Court of Appeals has
explained,

This presumption is one of the strongest, if not the
strongest, known to law.  The
presumption may outweigh positive evidence to the contrary and its strength
increases with the lapse of time, acknowledgments by the parties to the
marriage, and the birth of children.

However, the
presumption is not conclusive, but may be rebutted by evidence which negates
dissolution of the previous marriage. 
Such evidence need not be established absolutely or to a moral
certainty.  Rather, once evidence is
presented to show the previous marriage was not dissolved, then the fact finder
must determine whether the presumption of validity has been overcome.[4]

 













The Texas Family
Code also provides that A[a] marriage is void if entered into when either party
has an existing marriage to another person that has not been dissolved by legal
action or terminated by the death of the other spouse.@[5]  But the
burden of showing that the prior marriage was not dissolved is on the party
attacking the validity of the most recent marriage.[6]  That party must establish both the existence
of the prior marriage and its continuing validity at the time of the later
alleged marriage[7] and
must introduce sufficient evidence, standing alone, to negate the dissolution
of the prior marriage.[8]  AIt
is not necessary in order to rebut the presumption [of validity] that [the
challenger] prove the nonexistence of divorce in every jurisdiction where
proceedings could have been possible; it is only necessary to rule out those
proceedings where [the decedent] might reasonably have been expected to have
pursued them.@[9]         Our review of the record, as detailed
above, shows that Bobby=s estate offered no evidence to show that he and
Lawanna had not gotten a divorce or annulment after their formal divorce in
1979.  No one testified, for example,
that anyone had performed a records search in Wichita County or Montague
County, the counties in which Bobby had lived since his formal divorce.  Consequently, applying the appropriate
standard of review[10],
we hold that there is no evidence to support the trial court=s finding of fact that A[a]lthough Bobby . . . and Lawanna . . . separated in 1990, they never
took the required procedural steps to formally dissolve their marriage.@  We also hold
that as a matter of law, Bobby=s estate failed
to prove that a common-law marriage existed between Bobby and Lawanna at the
time of his death.  The trial court
therefore erred by naming Lawanna as an heir of Bobby=s estate.  We
sustain Donna=s first issue and her second issue in part.

Because of our
disposition of these issues, we also sustain Donna=s fourth issue, in which she contends that the trial
court erred by not reaching the issue of whether she proved that she and Bobby
were married at the time of his death. 
We do not reach the remainder of Donna=s issues.[11]

 

 








Having held that
the trial court erred by naming Lawanna as an heir of Bobby=s estate and by not determining whether Donna and
Bobby were legally married at the time of Bobby=s death, we grant Donna=s request to
reverse and remand this case for proceedings consistent with this opinion.[12]

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL B:   DAUPHINOT,
WALKER, and MCCOY, JJ.

WALKER, J. dissents without
opinion.

DELIVERED:  September 15, 2005











[1]See Tex. R. App. P. 47.4.





[2]In the record, this name was spelled both Lawanna
and Lawana.  We use Lawanna
throughout this opinion, including in all excerpts from the record.





[3]Tex. Fam. Code Ann. ' 1.102 (Vernon
1998).





[4]Bailey‑Mason v. Mason, 122 S.W.3d 894, 898 (Tex. App.CDallas 2003, pet. denied) (citations omitted).





[5]Tex. Fam. Code Ann. ' 6.202 (Vernon
1998).





[6]Davis v. Davis,
521 S.W.2d 603, 605 (Tex. 1975); In re Estate of Loveless, 64 S.W.3d
564, 574 (Tex. App.CTexarkana 2001, no pet.).





[7]See Estate of Claveria v. Claveria, 615 S.W.2d 164, 165 (Tex. 1981); see also Hovious
v. Hovious, No. 02-04-169-CV, 2005 WL 555219, at *7 (Tex. App.CFort Worth Mar. 10, 2005, pet. denied) (mem. op.).





[8]Hovious,
2005 WL 555219, at *7; Loveless, 64 S.W.3d at 574.





[9]Davis, 521
S.W.2d at 605.





[10]See City of Keller v. Wilson, 48 Tex. Sup. Ct. J. 848, 863, 2005 WL 1366509, at
*14 (Tex. June 10, 2005); Rocor Int=l, Inc.
v. Nat=l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002); Uniroyal Goodrich
Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied,
526 U.S. 1040 (1999); Cont=l Coffee Prods. Co. v. Cazarez,
937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby, 935 S.W.2d 114,
118 (Tex. 1996); Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.
1983); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951);
Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 TEX. L. REV. 361, 362-63 (1960).





[11]See Tex. R. App. P. 47.1.





[12]See Tex. R. App. P. 43.2(d), 43.3(a).