Donna Ralls Pike v. Estate of Bobby Neil Pike

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-301-CV

DONNA RALLS PIKE APPELLANT

V.

ESTATE OF BOBBY NEIL PIKE APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This appeal is from an heirship proceeding concerning the estate of an asbestos plaintiff whose executor holds about $140,000 in settlement proceeds pending the resolution of one basic issue:  Who, if anyone, was the lawful wife of Bobby Neil Pike at his time of death?  Because we hold as a matter of law that Bobby’s estate failed to meet its burden of proving that the marriage between Bobby and Lawanna
(footnote: 2) Gay Pike had not been dissolved at the time of his death, we remand this case to the trial court for proceedings consistent with this opinion. 

By the time of trial, Lawanna had also died.  Bobby and Lawanna’s son, Robby; Bobby’s niece, Judy; and Appellant Donna Ralls Pike testified.  The evidence showed the following.  Bobby and Lawanna got married in 1954 and formally divorced in 1979.  After the divorce, but also in 1979, Bobby moved back into the marital home, which had been awarded to Lawanna as her separate property in the divorce decree.  In 1981 or 1982, the home sustained flood damage.  Bobby and Lawanna moved into an apartment together while repairs were made.  Bobby remodeled the house after the flood, leaving just one master bedroom.  Bobby and Lawanna took out an SBA loan to finance the remodeling.  After another flood caused minor damage a few years later, Bobby and Lawanna stayed at the Wayfarer Motel together while repairs were made. Judy, who lived across the street, had a close relationship with Bobby, and took care of him when he got cancer, answered yes to the question, “And did they, from that point on for some period of time, cohabit or live together –?” The trial court admitted pictures and testimony without objection that showed that in the 1980s, Bobby and Lawanna went motorcycle riding with another couple, Wolf, and his wife, Ann, and that in the late 1980s and early 1990s, Bobby and Lawanna possessed a dog together, Pappy.  A letter dated October 2, 1989, from the couple’s son, Randy, contained the salutation, “Dear Mom, Dad, Danny, and Pappy.”  The envelope was addressed to Bobby at the home that he and Lawanna shared.

At various points, three of their four grown sons lived in the home with them after the formal divorce:  Robby, in 1980 or 1981, Danny, who lived with them most of his life (he died in 2001, after his father but before his mother), and Randy, who was living with them when he died in October 1990.  Bobby and Lawanna attended Randy’s funeral together.

Lawanna, whose last name had been changed back to her maiden name of Gay in the divorce decree, nevertheless went by “Pike” during the period from 1979 until Bobby moved out more than ten years later.  Various insurance documents admitted into evidence, coupled with Robby’s testimony, showed that (1) Lawanna and Bobby were named as the insureds for the period of December 15, 1986 through June 15, 1987 for the car that she drove, (2) Lawanna was listed as the insured for the periods of June 15, 1987 through December 15, 1987 and December 18, 1988 through June 18, 1989 for the Ford truck that Bobby drove, and (3) the homeowners’ policy with Texas Farmers Insurance Company for the home, effective November 7, 1990 through November 7, 1992, insured “BOBBY PIKE AND WIFE LAWANNA.”  In 1991, Lawanna signed a special power of attorney as 
Lawanna Gay Pike
.  Judy also testified that Lawanna went by “Pike” after Bobby moved back home.  Donna testified that the name on Lawanna’s driver’s license was Lawanna Gay. Robby testified that his parents had a reputation for living as if they had never divorced and that they acted like a married couple.  They held themselves out as a married couple and interacted with other family members as a couple during holidays and all through the year.  Judy also testified that Bobby and Lawanna had a reputation among family members and in the community for being a married couple from 1979, when they began living together again, until he moved out in the early 1990s.

At one point in the late 1980s or early 1990s, Lawanna got addicted to prescription drugs, and Bobby threatened a lawsuit against the doctor.  When Lawanna got sick, Bobby took care of her.  The two continued to live together until sometime between 1990 and 1993, when Lawanna kicked Bobby out of the house.  Finally, in the mid-1990s, Lawanna moved out of the house into a nursing home.  Bobby went to court, got a quitclaim deed, and sold the house a year or two later.

After Bobby left the home that he and Lawanna had shared, he began living with Donna two streets away.  He left Wichita Falls with her and lived in Stoneburg with her for a time.  In Stoneburg, Bobby and Donna bought a house together.  The warranty deed shows that the house was sold to them as husband and wife:  “Bobby N. Pike et ux. Donna G. Pike.”  They both signed the deed transferring the property when they sold it.  Donna testified that she went by “Donna Ralls Pike” and “Donna Gaylene Ralls” during the time that she cohabited with Bobby and that their relationship was sexual.  She also testified that they both held themselves out as married to each other.  At some point, they moved back to Wichita Falls, but she lived at a different address. He visited Lawanna in the nursing home, and his niece, Judy, joined Donna in taking care of him during the last years of his life.

In the asbestos lawsuit filed on Bobby’s behalf, Donna was named as a party.  Bobby’s answers to the interrogatories provided that he was currently married to Donna G. Rawls, that she was his common-law wife, and that Lawanna was his prior wife.  Judy testified that Bobby testified in his asbestos deposition, taken sometime within a month of his death, that Lawanna was his wife.  Donna contended that there had been no deposition, just a “day-in-the-life” video, and that no one had asked him any questions while the video was being created.  There was also evidence that Bobby’s mental capacity was lacking toward the end of his life.

Donna testified that Bobby was wearing the wedding ring that she gave him when he died.  At the time of Bobby’s death, Donna was the beneficiary of his burial policy.  The obituary in the newspaper listed Donna as Bobby’s wife.  Robby testified that he agreed to this compromise because he did not want Donna’s sons listed as Bobby’s sons and because he did not want his father’s funeral to turn into a circus.

After Bobby’s death, Lawanna applied for and drew social security survivor benefits as Bobby’s widow and a small pension from his former employer until her death in December 2001.  Donna did not attempt to claim survivor benefits as Bobby’s widow.

The trial court found:

(1) Bobby . . . and Lawanna . . . were married in 1954.

(2) Bobby . . . and Lawanna . . . had four children born of this marriage, to wit:  Robby Paul Pike, Bobby Donald [Donnie] Pike, Danny Pike[,] and Randy Pike.

(3) Bobby . . . and Lawanna . . . formally divorced on February 19, 1979.

(4) Sometime during 1979, Bobby . . . moved back in to the home on 33
rd
 Street in Wichita Falls, Texas, with Lawanna . . . and again began cohabiting with her.

(5) Bobby . . . and Lawanna . . . lived together continuously until sometime in 1990, at which time they separated.

(6) During such period from 1979 until sometime in 1990, Bobby . . . and Lawanna . . . lived together as husband and wife, they agreed to be married, and they represented to others that they were married.

(7) Although Bobby . . . and Lawanna . . . separated in 1990, they never took the required procedural steps to formally dissolve their marriage.

. . . . 

(9) Bobby . . . died intestate on March 6, 2001.

The trial court entered the following conclusions of law:

(1) On March 6, 2001, at the time of Bobby[‘]s . . . death, Bobby . . . and Lawanna . . . were married as the result of a common-law marriage which was never formally terminated.

(2) Bobby[‘]s . . . heirs are:  wife, Lawanna Jean Pike, son Robby Paul Pike, son Bobby Donald Pike, son Danny Pike[,] and grandson, Samuel Fleming.

In her first three issues, which she argues together, Donna contends that the trial court erred by concluding that Lawanna and Bobby had a common-law marriage at the time of his death and challenges the legal and factual sufficiency of the evidence to support the trial court’s findings of fact numbered (4) through (7).

The Texas Family Code provides the following presumption,

When two or more marriages of a person to different spouses are alleged, the most recent marriage is presumed to be valid as against each marriage that precedes the most recent marriage until one who asserts the validity of a prior marriage proves the validity of the prior marriage.
(footnote: 3)

As the Dallas Court of Appeals has explained,

This presumption is one of the strongest, if not the strongest, known to law.  The presumption may outweigh positive evidence to the contrary and its strength increases with the lapse of time, acknowledgments by the parties to the marriage, and the birth of children.

However, the presumption is not conclusive, but may be rebutted by evidence which negates dissolution of the previous marriage.  Such evidence need not be established absolutely or to a moral certainty.  Rather, once evidence is presented to show the previous marriage was not dissolved, then the fact finder must determine whether the presumption of validity has been overcome.
(footnote: 4)

The Texas Family Code also provides that “[a] marriage is void if entered into when either party has an existing marriage to another person that has not been dissolved by legal action or terminated by the death of the other spouse.”
(footnote: 5)  But the burden of showing that the prior marriage was not dissolved is on the party attacking the validity of the most recent marriage.
(footnote: 6)  That party must establish both the existence of the prior marriage and its continuing validity at the time of the later alleged marriage
(footnote: 7) and must introduce sufficient evidence, standing alone, to negate the dissolution of the prior marriage.
(footnote: 8)  “It is not necessary in order to rebut the presumption [of validity] that [the challenger] prove the nonexistence of divorce in every jurisdiction where proceedings could have been possible; it is only necessary to rule out those proceedings where [the decedent] might reasonably have been expected to have pursued them.”
(footnote: 9)   Our review of the record, as detailed above, shows that Bobby’s estate offered no evidence to show that he and Lawanna had not gotten a divorce or annulment after their formal divorce in 1979.  No one testified, for example, that anyone had performed a records search in Wichita County or Montague County, the counties in which Bobby had lived since his formal divorce.  Consequently, applying the appropriate standard of review
(footnote: 10), we hold that there is no evidence to support the trial court’s finding of fact that “[a]lthough Bobby . . . and Lawanna . . . separated in 1990, they never took the required procedural steps to formally dissolve their marriage.”  We also hold that as a matter of law, Bobby’s estate failed to prove that a common-law marriage existed between Bobby and Lawanna at the time of his death.  The trial court therefore erred by naming Lawanna as an heir of Bobby’s estate.  We sustain Donna’s first issue and her second issue in part.

Because of our disposition of these issues, we also sustain Donna’s fourth issue, in which she contends that the trial court erred by not reaching the issue of whether she proved that she and Bobby were married at the time of his death.  We do not reach the remainder of Donna’s issues.
(footnote: 11)

Having held that the trial court erred by naming Lawanna as an heir of Bobby’s estate and by not determining whether Donna and Bobby were legally married at the time of Bobby’s death, we grant Donna’s request to reverse and remand this case for proceedings consistent with this opinion.
(footnote: 12)

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

WALKER, J. dissents without opinion.

DELIVERED:  September 15, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
In the record, this name was spelled both 
Lawanna
 and 
Lawana
.  We use 
Lawanna
 throughout this opinion, including in all excerpts from the record.

3:
Tex. Fam. Code Ann.
 
§ 1.102 (Vernon 1998).

4:
Bailey-Mason v. Mason
, 122 S.W.3d 894, 898 (Tex. App.—Dallas 2003, pet. denied) (citations omitted).

5:
Tex. Fam. Code Ann.
 § 6.202 (Vernon 1998).

6:
Davis v. Davis
, 521 S.W.2d 603, 605 (Tex. 1975); 
In re Estate of Loveless
, 64 S.W.3d 564, 574 (Tex. App.—Texarkana 2001, no pet.).

7:
See Estate of Claveria v. Claveria
, 615 S.W.2d 164, 165 (Tex. 1981); 
see also Hovious v. Hovious
,
 
No. 02-04-169-CV, 2005 WL 555219, at *7 (Tex. App.—Fort Worth Mar. 10, 2005, pet. denied) (mem. op.).

8:
Hovious
, 2005 WL 555219, at *7; 
Loveless
, 64 S.W.3d at 574.

9:
Davis
, 521 S.W.2d at 605.

10:
See City of Keller v. Wilson
, 48 Tex. Sup. Ct. J. 848, 863, 2005 WL 1366509, at *14 (Tex. June 10, 2005); 
Rocor Int’l
,
 Inc. v. Nat’l Union Fire Ins. Co.
, 77 S.W.3d 253, 262 (Tex. 2002); 
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Cont’l Coffee Prods. Co. v. Cazarez
,
 
937 S.W.2d 444, 450 (Tex. 1996);
 Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996);
 Kindred v. Con/Chem, Inc.
, 650 S.W.2d 61, 63 (Tex. 1983)
; In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960).

11:
See
 
Tex. R. App. P.
 47.1.

12:
See
 
Tex. R. App. P.
 43.2(d), 43.3(a).