NEXEN INC., Nexen Petroleum Operations Yemen Limited, and Canadian Nexen Petroleum Yemen, Appellants,

v.

GULF INTERSTATE ENGINEERING CO., Appellee.

No. 01–04–01223–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 30, 2006.

David R. Noteware, Scott P. Stolley, Thompson & Knight, LLP, Dallas, for Appellant.

George T. Jackson, Burck, Lapidus & Lanza, P.C., Houston, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

TIM TAFT, Justice.

Appellants, Nexen Inc., Nexen Petroleum Operations Yemen Limited, and Canadian Nexen Petroleum Yemen (collectively, "the Nexen parties"), appeal from a take-nothing summary judgment rendered on their claims against appellee, Gulf Interstate Engineering Co. ("GIE"), for engineering work that GIE had done in Yemen on a pipeline for the Nexen parties' corporate predecessor. We determine whether (1) the statute of repose of Texas or Alberta, Canada applied and (2) GIE conclusively proved its affirmative defense that the applicable statute of repose barred the Nexen parties' claims again it. We affirm the judgment.

## Background

In 1991, as alleged by the Nexen parties, CanadianOxy Offshore International Ltd. ("COIL") entered into a contract ("the contract") with GIE, a company headquartered in Texas, for GIE to provide engineering services for COIL's proposed oil processing and development facility in the Masila Block area of Yemen ("the Masila Project"). Under the contract, GIE provided engineering services for what was designated "Phase 1" of the Masila Project, which included preparation of a design-basis manual, a project-execution plan, and a detailed estimate of total in-

stallation costs for the facilities for the Masila Project. The Masila Project had nine principal components: a gathering system, a pump station, a central production facility, a pipeline, an export terminal, data and communications systems, offshore facilities, infrastructure, and power generation and distribution.

On January 1, 1992, COIL and GIE entered into an amendment to the 1991 contract ("the amended contract"). The amended contract provided for GIE's engineering services to continue into "Phase 2." In Phase 2, GIE was to design and to engineer the detailed design, procurement, engineering, and "other project-related services" required for the Masila Project facilities. At no time did GIE perform construction services for the Masila Project.

The Nexen parties alleged in their petition and have asserted in their brief, without dispute by GIE, that appellant Nexen Inc. is the corporate successor to the company that was the corporate assignee of COIL; that appellant Nexen Inc. was a partner in appellant Canadian Nexen Petroleum Yemen, which in turn had an interest in the ownership and operations of the Masila Project; and that appellant Nexen Petroleum Operations Yemen Limited was a partner in appellant Canadian Nexen Petroleum Yemen and was also a successor to COIL.

In July or August 1993, the pipeline at the Masila Project was completed, with the exception of punch-list and "ROW cleanup" items, and became operational, although engineering and construction on the overall Masila Project was still ongoing. In July 1994, GIE certified that it had completed all of its engineering work for the Masila Project.

The Nexen parties alleged that, in April 2002, rainfall caused flooding at the Masila Project site. The flooding caused the pipeline to move, which further caused the pipeline to strain, to buckle, and to lose its concrete coating, resulting in damage to the pipeline. In April 2004, the Nexen parties sued GIE for failing to design and to engineer the pipeline and its route properly, alleging claims for breach of contract, breach of warranty, negligence, and strict liability for design defect. GIE answered, alleging, among other things, the affirmative defense of the 10–year statute of repose under Texas or Alberta law.

GIE moved for traditional summary judgment against all of the Nexen parties' claims. GIE asserted that the statute of repose under both Texas and Alberta law precluded the Nexen parties' claims. Concerning the choice of law, GIE argued:

> Although there is some indication in the contract[s] between the parties that the laws of Alberta, Canada should apply, the choice of law is immaterial because the overall result is the same whether Texas law or Alberta law applies: [the Nexen parties'] claims must be dismissed with prejudice as a matter of law.

GIE then analyzed the statutes of repose under both jurisdictions' laws.[1] The crux of GIE's argument was that (1) under both statutes, the date of substantial completion of GIE's work was the accrual date for purposes of repose and (2) that date was July 1993, when the pipeline became fully operational. The Nexen parties responded that (1) the repose law of Alberta and Texas differed materially; (2) Alberta law applied; (3) the Nexen parties' claims were timely filed under Alberta's repose statute; and, alternatively, (4) the Nexen

1. In support of this summary-judgment ground, GIE relied on—and attached as summary-judgment evidence—the Alberta repose statute and two cases from that jurisdiction.

parties' claims were timely filed under Texas's repose statute.[2] In particular, the Nexen parties argued that the pipeline portion of GIE's work was only part of the work that GIE had contracted to do for the Masila Project and that GIE's overall work was not substantially completed until at least July of 1994.

GIE filed a summary-judgment reply, in which it again argued that the result was the same under either Texas or Alberta law and in which GIE also clarified its summary-judgment grounds by arguing that, because the Nexen parties had sued for GIE's actions relating to the pipeline portion of the Masila Project, the accrual date for calculating the statutes of repose should be the date that GIE finished its work on the pipeline. In their supplemental briefing below, the Nexen parties responded that GIE could not sever its work under the contract into discrete portions merely to invoke the statutes of repose starting at an earlier date. GIE then filed another brief, again asserting that the result was the same under either Texas or Alberta law and that, for purposes of calculating the repose statutes' accrual dates, the pipeline portion of GIE's work was severable from its overall work.[3]

In October 2004, the trial court rendered a take-nothing summary judgment in favor of GIE on all of the Nexen parties' claims against it. The summary-judgment order did not specify the grounds upon which it was rendered.

### Standard of Review

GIE moved for traditional summary judgment. *See* Tex.R. Civ. P. 166a(c). Summary judgment under rule 166a(c) is proper only when a movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense. *Id.*

In our review, we indulge every reasonable inference in favor of the nonmovant, resolve any doubts in its favor, and take as true all evidence favorable to it. *Id.* When, as here, an order granting summary judgment does not specify the grounds upon which the trial court ruled, we must affirm to the extent that any of the summary judgment grounds is meritorious. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

The statute of repose operates as an affirmative defense. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex. 1996). Accordingly, GIE, as the traditional summary-judgment movant, had the burden conclusively to prove each essential element of that defense. *Id.* Only if GIE carried this burden would the burden then shift to the Nexen parties to raise a fact issue precluding summary judgment on this defense. *See, e.g., id.*

### Choice of Law

In their first argument under their issue, the Nexen parties assert that the statute of repose of Alberta, Canada, rather than of Texas, applied to their claims because, among other things, both the con-

---

2. In support, the Nexen parties attached the Alberta repose statute, several cases from that jurisdiction, and one of the Alberta Law Reform Institute's ("ALRI") reports on limitations.

3. In this briefing, GIE again cited to and relied on Alberta case law.

tract and the amended contract called for application of Alberta's law. GIE responds that the Nexen parties waived the application of Alberta law for various reasons and that, in any event, the same result obtains under either jurisdiction's repose law.

■■■ The contract and the amended contract between the Nexen parties and GIE expressly called for the application of the laws of Alberta, Canada. Texas courts generally apply Texas procedural law even while applying the parties' contractual choice of law for substantive matters. *See Ill. Tool Works, Inc. v. Harris*, 194 S.W.3d 529, 532 (Tex.App.-Houston [14th Dist.] 2006, no pet.). Statutes of repose have been described as a substantive definition of rights, as opposed to a procedural limitation on rights.[4] *E.g., Trinity River Auth. v. URS Consultants, Inc.-Tex.*, 889 S.W.2d 259, 261 (Tex.1994). Therefore, if the choice-of-law provision is enforceable, it requires the application of Alberta's statute of repose.

■■ GIE's summary-judgment argument was consistently that the two jurisdictions' statutes of repose did not differ materially, so that the Nexen parties would lose under either law. The Nexen parties argued below, as they do on appeal, that the contract and the amended contract required the application of Alberta law and, alternatively, that even if Texas law applied, they would prevail. The trial court did not recite in its summary-judgment order which law it had applied, and there is no other choice-of-law ruling that we may consider.[5] However, "[b]ecause the question of which ... law applies is one for the court, in the absence of any indication as to which ... law the trial court actually applied, we presume that the trial court correctly analyzed the [applicable choice-of-law rules], took judicial notice of the relevant law brought to its attention, and applied the correct law according to the established choice of law principles." *State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282, 290 (Tex.App.-Corpus Christi 1990, writ denied) (considering implicit ruling under Texas Rule of Evidence 202, concerning laws of other states); *see also In re Estate of Loveless*, 64 S.W.3d 564, 575 (Tex.App.-Texarkana 2001, no pet.) ("A court shall take judicial notice if requested by a party and supplied with the necessary information. A party who intends to raise an issue concerning the law of a foreign country must give written notice and furnish all parties copies of any written materials or sources the party intends to use as proof of the foreign law. The determination of the laws of a foreign country is a question of law for the

---

**4.** "Unlike traditional limitations provisions, which begin running upon accrual of a cause of action, a statute of repose runs from a specified date without regard to accrual of any cause of action." *Trinity River Auth. v. URS Consultants, Inc.-Tex.*, 889 S.W.2d 259, 261 (Tex.1994). Statutes of repose thus may "potentially cut off a right of action before it accrues." *Id.* at 263–64. It is for this reason that statutes of repose are viewed as substantive, rather than procedural.

**5.** The Nexen parties argue that a docket-sheet entry indicates that the trial court applied the Alberta statute of repose. GIE contests that we may consider a docket-sheet entry to be the equivalent of an express ruling. *See Hamilton v. Empire Gas & Fuel Co.*, 134 Tex. 377, 384–85, 110 S.W.2d 561, 566 (1937) (indicating that docket-sheet entry is generally not accepted as substitute for ruling entered of record); *Energo Int'l Corp. v. Modern Indus. Heating, Inc.*, 722 S.W.2d 149, 151 n. 2 (Tex. App.-Dallas 1986, no writ) (indicating that docket-sheet entry ordinarily forms no part of record that may be considered, but is instead memorandum made for trial court's and clerk's convenience). Given our disposition below, we need not determine whether the docket-sheet entry constituted an express ruling on the choice-of-law matter.

trial court. Therefore, though the trial court did not explicitly refer to the provisions of Honduran law supplied by Wanda in its order granting summary judgment or at the hearing on her motion, we must presume it took judicial notice of those provisions.").

## A. GIE's Arguments on Appeal

■ GIE devotes a large portion of its appellate brief to the argument that the Nexen parties "waived" the application of Alberta law because (1) they "did not seek and receive a ruling pursuant to Rule 203 of the Texas Rules of Evidence"; (2) they invoked Texas substantive law by seeking attorney's fees in their petition under a Texas statute; and (3) they allegedly "failed to sufficiently apprise the court of Alberta law and its application to this case." We reject GIE's waiver arguments.

First, we note that GIE—through its answer's allegation that the Nexen parties' claims were barred under the repose laws of Texas or Alberta—was the first party to raise the choice-of-law issue. Indeed, because the contracts expressly called for application of Alberta law, GIE, as the summary-judgment movant, had the burden to demonstrate conclusively either (1) that the Alberta statute of repose barred the Nexen parties' claims; (2) that the contracts' choice-of-law provisions were in-

valid, so that the Texas statute of repose applied and barred the Nexen parties' claims; or, as GIE actually chose to do, (3) that no material difference existed between application of the two jurisdictions' statutes of repose, so that the Nexen parties' claims were barred under either law. In attempting to prove the third matter conclusively, *GIE itself* produced and relied on the Alberta statute and two Alberta cases.[6] Having litigated under Alberta and Texas law, GIE cannot now argue that *the Nexen* parties did not sufficiently raise the issue or that they are somehow estopped from asserting the application of Alberta's law. Moreover, rule 203, by its plain language, does not require an express, written ruling; none of the cases that GIE cites stands for this proposition; and, as explained above, we deem the trial court to have made the proper choice of law when, as here, it is presented with the choice-of-law issue and the evidence in support of it. *See* TEX.R. EVID. 203 (not mentioning that express, written ruling is required); *In re Estate of Loveless*, 64 S.W.3d at 575; *cf. State Nat'l Bank*, 802 S.W.2d at 290 (similar holding under Texas Rule of Evidence 202); TEX.R.APP. P. 33.1(a)(2)(A) (allowing for implicit rulings to preserve error). Finally, the Alberta case law, the Alberta Limitations Act, and the ALRI report[7] that, together, both par-

---

**6.** We note that GIE's proof showed not that the statutes are materially similar, but that they are worded differently in material ways. For example, the applicable portion of the Alberta statute of repose provides that "a claim or any number of claims based on any number of breaches of duty, resulting from a continuing course of conduct or a series of related acts or omissions, arises *when the conduct terminates or the last act or omission occurs.*" ALBERTA LIMITATIONS ACT, R.S.A., c. L–12, s. 3(3)(a) (2000) (emphasis added). In contrast, the applicable Texas statute of repose requires that suit be filed "not later than 10 years after the *substantial completion of the improvement or the beginning of operation*

*of the equipment* in an action arising out of a defective or unsafe condition of the real property, the improvement, or the equipment." TEX. CIV. PRAC. & REM.CODE ANN. § 16.008(a) (Vernon 2002) (emphasis added). Because GIE's evidence showed that the two jurisdictions' statutes of repose differed materially, it was appropriate for the trial court to conduct a choice-of-law analysis.

**7.** The ALRI report that the Nexen parties presented in support of the application of Alberta's law was an earlier version of the same report on which at least two Alberta courts have relied—a fact that was also shown below by virtue of those courts' opinions having

ties presented below are the type of materials contemplated under rule 203 to prove foreign jurisdictions' laws.[8] *See* Tex.R. Evid. 203 (allowing court to consider, in determining law of foreign country, *"any material or source … including but not limited to affidavits, testimony, briefs, and treatises"*). In fact, if this type of evidence did not suffice, then GIE—which presented this same type of evidence in support of its own summary-judgment motion—could not have carried its burden of showing conclusively that the Alberta and Texas statutes of repose were materially similar.

### B. Which Law Applied

■ "The most basic policy of contract law is the protection of the justified expectations of the parties." *Chase Manhattan Bank, N.A. v. Greenbriar N. Section II*, 835 S.W.2d 720, 723 (Tex.App.-Houston [1st Dist.] 1992, no writ) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex.1990)). "The parties' understanding of their respective rights and obligations under the contract depends in part upon how certain they are about how the law will interpret and enforce their agreement." *Id.* (citing *DeSantis*, 793 S.W.2d at 677). When, as here, "the parties reside or expect to perform their respective obligations in different jurisdictions, they may be uncertain about which jurisdiction's law will govern the construction and enforcement of the contract." *Id.* (citing *DeSantis*, 793 S.W.2d at 677). "In an attempt to avoid this uncertainty, they may express in their agreement their choice that the law of a specified jurisdiction will apply to their contract." *Id.* (citing *DeSantis*, 793 S.W.2d at 677). "Judi-

cial respect for their choice promotes the policy of protecting their expectations." *Id.* (citing *DeSantis*, 793 S.W.2d at 677).

■ "However, the parties' freedom to choose which jurisdiction's law will apply to their agreement is not unlimited." *Id.* (citing *DeSantis*, 793 S.W.2d at 677). "They cannot require that their contract be governed by the law of a jurisdiction which has no relation whatsoever to them or their agreement." *Id.* (citing *DeSantis*, 793 S.W.2d at 677). "Nor can they, in their agreement, thwart or offend the public policy of the state whose law would otherwise apply." *Id.* (citing *DeSantis*, 793 S.W.2d at 677).

These principles are embodied in section 187 of the Restatement (Second) of Conflicts of Law, which the Texas Supreme Court has adopted for review of choice-of-law clauses. *See DeSantis*, 793 S.W.2d at 677–78 (adopting same). Section 187 provides as follows:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

 (a) the chosen state has no substantial relationship to the parties or the

8. been produced for the trial court's consideration. *See Seidel v. Kerr*, [2003] 330 A.R. 284, 19 Alta. L.R. (4th) 201, at ¶ 45; *Bowes v. City of Edmonton*, [2003] A.J. No. 700, 2003 ABQB 492, 2003 AB.C. LEXIS 1644, at ¶ 89.

8. The trial court could consider the evidence of Alberta's law supplied by both parties, regardless of who had the burden of proof. *See PennWell Corp. v. Ken Assocs., Inc.*, 123 S.W.3d 756, 761 n. 4 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188,[9] would be the state of the applicable law in the absence of an effective choice of law by the parties.

. . . .

Restatement (Second) of Conflict of Laws § 187 (1971).

■ We conclude that, under either Restatement section 187(1) or 187(2), the Alberta statute of repose applied.[10] If, for example, the issue of what statute of repose to apply is one that "the parties could have resolved by an explicit provision in their agreement directed to that issue," then we would apply section 187(1). *Id.* § 187(1); *see* Alberta Limitations Act, R.S.A., c. L–12, s. 7 (2000) ("[I]f an agreement expressly provides for the extension of a limitation period provided by this Act, the limitation period is altered in accordance with the agreement."); *cf. Kenneco Energy, Inc. v. Johnson & Higgins of Tex.,* 921 S.W.2d 254, 262 n. 9 (Tex.App.-Houston [1st Dist.] 1995) ("A party may contractually lengthen a statute of limitation"), *modified on other grounds,* 962 S.W.2d 507 (Tex.1998). If section 187(1)

applies, then we would apply the parties' contractual choice of Alberta law.

If, on the other hand, the issue of what statute of repose to apply is one "that the parties could not have resolved by an explicit provision in their agreement directed to that issue," then we would apply section 187(2). *Id.* § 187(2) & cmt. d ("Examples of such questions [falling under section 187(2) ] are those involving capacity, formalities and substantial validity."); *Trinity River Auth.,* 889 S.W.2d at 261 (indicating that statutes of repose have been categorized as substantive, rather than procedural). Under section 187(2), we would apply the parties' contractual choice of Alberta law unless (1) Alberta has no substantial relationship to the parties or the transaction or, (2) assuming without deciding that Texas has a materially greater interest in determining the repose issue, the application of Alberta repose law would be contrary to a fundamental Texas public policy and Texas has the most significant relationship to the transaction and the parties. *See DeSantis,* 793 S.W.2d at 677–78; Restatement (Second) of Conflict of Laws § 187(2).

■ Under our first inquiry of section 187(2)—whether Alberta has a substantial relationship to the parties or the transaction—the proper inquiry is whether "the contract bears a reasonable relation to the chosen state...." *First Commerce Realty Investors v. K—F Land Co.,* 617 S.W.2d 806, 808–09 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.); *see DeSantis,* 793 S.W.2d at 678 (applying "substantial

---

9. Restatement (Second) of Conflicts of Law section 188 provides in pertinent part that "the rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles states in [Restatement

(Second) of Conflicts of Law] section 6." Restatement (Second) of Conflict of Laws § 188 (1971).

10. Because the resolution of the choice-of-law issue would be the same under either Restatement section, we need not decide whether Restatement section 187(1) or 187(2) applied.

relationship" terminology for same test).[11] Here, (1) the amended contract recited that it was executed in Calgary, Alberta, Canada; (2) the amended contract was signed by COIL's representative who officed in Calgary, Alberta, Canada; and (3) the contract and the amended contract required that GIE's invoices and notices be sent to a representative or to an office in Calgary, Alberta, Canada. The Nexen parties and the transaction were thus substantially related to Alberta, Canada. *See DeSantis*, 793 S.W.2d at 678–79 (holding that chosen state's law had substantial relationship to parties and transaction because one of parties had corporate office in that state and because some of parties' negotiations occurred there). Accordingly, the parties' choice of Alberta law must be respected unless the application of Alberta law offends fundamental Texas public policy *and* Texas has the most significant relationship to the transaction and parties. *See DeSantis*, 793 S.W.2d at 677–78; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(b).

 As for our second inquiry under Restatement section 187(2), we begin with the issue of whether application of Alberta repose law would be contrary to a fundamental Texas public policy.[12] Generally speaking, application of another jurisdiction's laws is not contrary to the forum state's fundamental public policy merely because application of the other state's law leads to a different result from the result that would be obtained if the forum state's law were applied. *DeSantis*, 793 S.W.2d at 680 (construing RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 187 cmt. g). Likewise, the fact that the other state's law differs materially from that of the forum state does not itself show that application of the other state's law would offend Texas public policy. *Id.* Rather, in determining whether public policy would be violated by the application of another state's law,

> the focus is on whether the law in question is a part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction.

*Id.* Moreover, if the public policies in the forum state and the parties' chosen state "are the same, different approaches do not contravene [the policies] just because one [approach] is somewhat stricter than the other." *Chesapeake Oper., Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 178 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

Here, the Texas repose statute applies more to a specific group of plaintiffs, whereas the Alberta statute is of general application, and the statutes have different accrual dates. *Compare* TEX. CIV. PRAC. & REM.CODE ANN. § 16.008(a) (providing for

---

**11.** The *First Commerce Realty Investors* court, like several courts predating the Texas Supreme Court's decision in *DeSantis*, used the language "reasonable relation[ship]." *See First Commerce Realty Investors v. K—F Land Co.*, 617 S.W.2d 806, 808–09 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.); *see also Hi Fashion Wigs Profit Sharing Trust v. Hamilton Inv. Trust*, 579 S.W.2d 300, 302 (Tex.Civ.App.-Eastland 1979, no writ). In contrast, the *DeSantis* court used the term "substantial relationship," which the court adopted from Restatement (Second) of Con- flict of Laws section 187(2)(a). *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex.1990). We need not determine what, if any, difference exists between the two standards because we conclude, based on this record, that the applicable relationships with Alberta sufficed under any possible reading of either standard.

**12.** Again, we assume without deciding that Texas law has a materially greater interest in this issue than does Alberta.

10–year statute of repose for engineers and certain other professionals) *with* AL-BERTA LIMITATIONS ACT, R.S.A., c. L–12, s. 3(1)(b) (2000) (providing for general 10–year statute of repose). Nonetheless, each jurisdiction has a repose statute of 10 years. *Id.* Selection of Alberta substantive law thus subjects the Nexen parties to *some* repose statute, rather than freeing them of one altogether. Additionally, the policies and purposes underlying the two jurisdictions' repose statutes are similar.[13] *See Chesapeake Oper., Inc.*, 94 S.W.3d at 178 (indicating that if public policies in forum state and parties' chosen state "are the same, different approaches do not contravene [the policies] just because one [approach] is somewhat stricter than the other."). Furthermore, the mere fact that Alberta's repose law differs to some extent from Texas's does not make the Alberta law contrary to Texas's fundamental public policy, even if the application of Alberta's repose law would lead to a different result. *See DeSantis*, 793 S.W.2d at 680. Finally, at least one Texas court, although it did not address the issue of whether doing so would violate a fundamental public policy of Texas, has applied another jurisdiction's statute of repose. *See Crisman v. Cooper Indus.*, 748 S.W.2d 273, 280 (Tex.App.-Dallas 1988, writ denied) (applying another state's statute of repose under pre-*DeSantis* choice-of-law rule for tort actions, even when Texas did not have applicable statute of repose for that tort); *cf. Allison v. ITE Imperial Corp.*, 928 F.2d 137, 145 (5th Cir.1991) (holding that application of another state's statute of repose did not violate fundamental public policy of forum

state of Mississippi); *Boudreau v. Baughman*, 322 N.C. 331, 342, 368 S.E.2d 849, 858 (N.C.1988) (holding that application of another state's statute of repose did not violate fundamental public policy of forum state of North Carolina). Accordingly, we conclude that the application of Alberta's statute of repose does not offend any fundamental public policy of Texas, and we thus need not decide whether Texas has the most significant relationship to the transaction and parties.

We hold that, under either provision of Restatement section 187, Alberta law applied to the Nexen parties' claims. Accordingly, we further hold that the trial court could not have rendered summary judgment on the basis that the Texas statute of repose applied to those claims, and we thus deem the trial court to have applied Alberta law in its summary-judgment determination. *See In re Estate of Loveless*, 64 S.W.3d at 575; *cf. State Nat'l Bank*, 802 S.W.2d at 290 (under Texas Rule of Evidence 202). We thus need not reach the Nexen parties' alternative arguments under their issue that, if the Texas statute of repose applied, that statute did not bar their claims.

### The Alberta Statute of Repose

In the next argument under their sole issue, the Nexen parties assert that the trial court erred in rendering summary judgment because GIE did not conclusively demonstrate that the Alberta statute of repose barred their claims. In particular, the Nexen parties argue that Alberta law

---

**13.** *See Trinity River Auth.*, 889 S.W.2d at 263–64 (indicating that purpose of limitations statutes in general, and of section 16.008 in particular, is to compel exercise of right of action within reasonable time so that opposing party has fair opportunity to defend before evidence is stale); ALBERTA LAW REFORM INSTITUTE, *Limitations*, at 1–2 (Report No. 55, Dec. 1989) (indi-

cating that concept of repose serves interests of defendants by providing for absolute cut-off date for claims, in order to facilitate long-term planning by those persons, as well as to require bringing of claims before evidence becomes "defective because of the passage of time").

does not allow GIE to divide up its work under the contract in order to obtain an earlier accrual date.

In pertinent part, the Alberta statute of repose, which is part of the Alberta "Limitations Act," provides:

### 3. Limitations periods

(1) ... [I]f a claimant does not seek a remedial order within

...

 (b) 10 years after the claim arose,

... the defendant, on pleading this Act as a defence, is entitled to immunity from liability in respect of the claim.

 ...

(3) For the purposes of subsection (1)(b),

 (a) a claim or any number of claims based on any number of breaches of duty, resulting from a continuing course of conduct or a series of related acts or omissions, arises when the conduct terminates or the last act or omission occurs;

 (b) a claim based on the breach of a duty arises when the conduct, act or omission occurs;

 ....

ALBERTA LIMITATIONS ACT, R.S.A., c. L–12, ss. 3(1)(b), 3(3)(a)-(b) (2000). The defendant has the burden of proof under section 3(1)(b). *Id.* s. 3(5)(b). The Limitations Act does not define the term "conduct" as used in section 3(3)(a) or expressly state that conduct under a contract can be divided into discrete parts, the ending of each of which triggers the repose period, absent such a division in the contract itself.

██ In its summary-judgment motion, GIE relied on sections 3(1)(b) and 3(3)(a) to defeat the Nexen parties' claims. In its appellee's brief, GIE argues that the summary judgment may be affirmed based on the limitations accrual date specified in Limitations Act section 3(3)(*b*): "a claim based on the breach of a duty arises when the conduct, act or omission occurs." GIE did not assert this provision of the Limitations Act as a basis for summary judgment, however, instead relying on section 3(3)(*a*): "a claim or any number of claims based on any number of breaches of duty, resulting from a continuing course of conduct or a series of related acts or omissions, arises when the conduct terminates or the last act or omission occurs." [14] Summary judgment cannot be rendered on a basis that was not asserted in the movant's motion as a ground for summary judgment. *See, e.g., Postive Feed, Inc. v. Guthmann,* 4 S.W.3d 879, 881 (Tex.App.-Houston [1st Dist.] 1999, no pet.). We thus consider only whether GIE proved conclusively that the Alberta Limitations

---

14. GIE's summary-judgment motion did quote both sections 3(3)(a) and 3(3)(b) and once stated that the repose period ran from the *alleged breach* or the date of the work's substantial completion, but the overall gist of GIE's motion was that Limitations Act section 3(1)(b) and 3(3)(a)—the latter of which GIE construed as being triggered upon substantial completion of the work—barred the Nexen parties' claims. Because "[s]ummary judgment is a harsh remedy," an appellate court "will strictly construe summary judgment in procedural and substantive matters against the movant." *Tanksley v. CitiCapital Commercial Corp.,* 145 S.W.3d 760, 763 (Tex.App.- Dallas 2004, pet. denied) (citations omitted). Accordingly, we must strictly construe GIE's summary judgment grounds. *Castillo v. Flores,* No. 01–05–00760–CV, 2006 WL 488609, at *9 (Tex.App.-Houston [1st Dist.] Mar. 2, 2006, no pet.). Given a fair reading and a strict construction, GIE's summary-judgment ground was that the Limitations Act section 3(1)(b) and 3(3)(a) barred the Nexen parties' claims. This is also how the Nexen parties interpreted the motion's grounds below: their summary-judgment response focused—without correction by GIE in its summary-judgment reply brief—on Limitations Act section 3(3)(a).

Act sections 3(1)(b) and 3(3)(a) barred the Nexen parties' claims.

■■■ There is relatively little Alberta case law interpreting section 3(3)(a). What case law there was at the time of summary judgment, the parties produced. The case law that the parties produced does not resolve the question of whether a contracting party's overall work may be divided piecemeal for purposes of determining when the statute of repose is triggered, when the contract does not so divide the work.[15] Nonetheless, we conclude that, what Alberta law there is suggests that Alberta's statute of repose bars the Nexen parties' claims in this case.

Section 3(3)(a) is written in reference to the claim made: "[A] *claim* or any number of claims *based on* any number of breaches of duty...." ALBERTA LIMITATIONS ACT, R.S.A., c. L–12, s. 3(3)(a) (2000) (emphasis added). More specifically, section 3(3)(a)'s repose period is triggered only when the breach of duty *on which the claim is based* results from a continuing course of conduct; the triggering events (termination of conduct or last act or omission) are thus also tied to the breach of the duty on which the claim is based. It is true that, generally speaking, Alberta limitations statutes are to be strictly construed. *See Campbell Estate v. Fang*, [1994] A.J. No. 521, at ¶ 10 (considering another limitations statute that provided, in terms similar to part of Limitations Act section 3(3)(a), that one year from "date when the professional services terminated"). That is, "[b]efore a person should be deprived of his or her cause of action, the language in the limiting statute should be clear and unambiguous." *Id.* But the rule of strict construction generally makes a difference only if the statute's language is ambiguous. *See Cail v. Serv. Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983) ("If the disputed statute is clear and unambiguous extrinsic aids and rules of statutory construction are inappropriate ..., and the statute should be given its common everyday meaning.") (ci-

---

**15.** None of the case law that the parties produced expressly decides this issue, some of it contains only dictum concerning section 3(3)(a), and some of it interprets different limitations statutes with somewhat similar wording. *See Bowes v. City of Edmonton*, [2003] A.J. No. 700, 2003 ABQB 492, 2003 AB.C. LEXIS 1644, at ¶¶ 74–76, 92, 114, 119–22 (cited by both parties; providing that, under predecessor to Limitations Act, repose period began running on date that construction of plaintiffs' homes was finished because that was date that their claims against defendant, who had sold them their land, were discoverable; containing only dictum on purposes of current Limitations Act section 3(3)(b)); *Seidel v. Kerr*, [2003] 330 A.R. 284, 19 Atla. L.R. (4th) 201, at ¶¶ 42–45 (cited by the Nexen parties; stating in dictum rationale behind Limitations Act section 3(3)(a) and applying that rationale to hold that shareholder-oppression suit was not barred by repose); *Badger Daylighting, Inc. v. Sunoma Energy Corp.*, [2003] 19 Alta. L.R. (4th) 54, 10 W.W.R. 480, at ¶ 69 (cited by the Nexen parties; concerning whether lien was timely filed when it was filed during period that work was abated for weather); *Campbell Estate v. Fang*, [1994] A.J. No. 521, at ¶ 16 (cited by the Nexen parties; considering different limitations statute, which provided (like part of section 3(3)(a)) that suit must be brought within one year from "date when the professional services terminated"; not considering accrual date, but instead whether claimant fell within class of persons to whom statute applied). Some of the case authority that the parties produced was also inapposite. *See Herron v. Hunting Chase, Inc.*, [2003] 330 A.R. 53, 16 Alta. L.R. (4th) 225, at ¶¶ 19–23 (relied on by the Nexen parties; considering meaning of "substantial performance" for purposes of common-law anticipatory breach); *Allen Farms Ltd. v. Oliver Indus. Supply Ltd.*, [1992] 124 A.R. 321, 1992 A.R. LEXIS 4046, at ¶ 105 (cited by GIE; concerning different limitations statute providing that "date of substantial performance of the agreement" was accrual date). In short, none of the parties' authority commands a particular result or is particularly helpful in this case.

tation omitted); *City of Houston v. Jackson,* 192 S.W.3d 764, 770 (Tex.2006) ("When the statutory language is unambiguous, we must apply the statute as written."). The plain language of section 3(3)(a) is not ambiguous because it leads to only one conclusion: that the two listed triggering events are tied to the breach of duty on which the claim is based.

We now consider the pleadings and the summary-judgment evidence in light of the contract, the amended contract, and the law. The Nexen parties are correct that both contracts spoke of GIE's work on the Masila Project as a whole, generally without breaking down that work into discrete divisions other than into Phase 1 and Phase 2—neither of which phases encompassed only the pipeline work. Nonetheless, the Nexen parties' petition alleged that "because of the manner in which GIE *designed the Pipeline and the Planned Pipeline Route,* the precipitation and flooding caused the pipeline to move," thereby damaging the pipeline. (Emphasis added.) Their claims were thus squarely—and completely—based on GIE's engineering and design work on the pipeline, rather than on other aspects of the Masila Project. GIE presented summary-judgment evidence that, when viewed in the light most favorable to the Nexen parties, showed that the pipeline was designed, was constructed, and became operational no later than August 1993, with only minor punch-list items and "ROW clean-up" to be done after that date. For example, GIE's vice-president described GIE's pipeline work as substantially completed by July 1993. Likewise, a June 1993 "project status report" indicated that "[t]he ... Main Export Pipeline was Mechanically accepted by [COIL] on 26th June 1993. Only minor punchlist items and ROW clean-up remain." The Nexen parties' claims were based on GIE's conduct in "design[ing] the Pipeline and the Planned Pipeline Route," which conduct constituted the sole "breaches of duty" upon which their claims were based. *See* ALBERTA LIMITATIONS ACT, R.S.A., c. L–12, s. 3(3)(a) (2000). GIE thus carried its burden of showing conclusively both that its last relevant act or omission in engineering and designing the pipeline occurred more than 10 years before suit was filed and that GIE terminated its relevant engineering and design work on the pipeline more than 10 years before suit was filed. Accordingly, it is immaterial that the contracts viewed GIE's services in terms of the overall Masila Project or that other summary-judgment evidence raised a fact issue on whether GIE's work continued on aspects of the Masila Project other than the relevant pipeline work after July 1993.[16]

*Seidel v. Kerr,* on which the Nexen parties rely, does not require a different result. *See id.* [2003] 330 A.R. 284, 19 Alta.

**16.** For example, viewed in the required light, one of the 1993 status reports also showed that other engineering projects that the contracts listed among GIE's responsibilities were on-going at the time that the pipeline went into use. Another 1993 status report indicated that the Masila Project reached a "major milestone" when the pipeline went into use in July and early August 1993. However, that same report stated that "[t]he completion and start-up of the Central Production Facility remains as a challenging task to fulfill the commitment of the project team"; it recited that "assessment of [GIE's] remaining work to complete the engineering and procurement activities is underway"; and the report again showed that other engineering projects that the contracts listed among GIE's responsibilities were on-going at that time. In fact, it was not until July 20, 1994 that GIE certified, as the contract required, that "all work authorized under the contract has been completed." Finally, GIE submitted three invoices to the Nexen parties for work done in 1995. None of this evidence appears to concern GIE's alleged breaches of duty in their work on the engineering and design of the pipeline and its placement.

L.R. (4th) 201. *Seidel* involved a suit for shareholder oppression, and the claims there were based on the defendant's continuing actions constituting fraudulent or wrongful conduct. *See id.* at ¶ 5. The trial court determined that the limitations period, under the Limitations Act's predecessor, ran from the date when the claimants should have first discovered the breach of duty; the *Seidel* court disagreed, holding that limitations had not run because the claims were based on the defendant's course of conduct that continued thereafter. *See id.* at ¶¶ 14–15, 48–51 ("The trial judge focused on the first act in the course of conduct and treated the entire series of transactions as one act. This is not logical when *the claim involves* a series of acts amounting to a course of oppressive conduct.") (emphasis added). Here, in contrast, the claims involve a course of conduct leading up to and including the last day of the relevant work on the pipeline, not acts occurring afterwards on other aspects of the Masila Project.

Although the Alberta statute of repose is to be strictly construed and the contracts defined GIE's work in terms of the overall project divided *only into Phase 1* and Phase 2, the repose statute unambiguously ties the triggering events for repose to the breaches of duty on which the claims are based—here, GIE's engineering and design work on the pipeline and its placement. Accordingly, we hold that the trial court did not err in rendering summary judgment on the basis that the Alberta statute of repose barred the Nexen parties' claims.

## Conclusion

We overrule the Nexen parties' issue. We affirm the judgment of the trial court.