**Opinion issued June 28, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00212-CV

———————————

**CONTROL WORKS, INC., ELSA CANTU-RIOS, AND MYLA CANTU,**
**Appellants**

**V.**

**JACK PHILLIP SEEMAN, Appellee**

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-10404**

---

## MEMORANDUM OPINION

After a jury trial, the trial court entered judgment in favor of Jack Phillip Seeman on his claims that Tony Cantu, individually and through his alter-ego, Control Works, Inc., fraudulently transferred assets to his wife, Elsa Cantu-Rios, and mother, Myla Cantu, to prevent Seeman from collecting a $300,000 judgment

awarded to him in a previous suit between the parties. In five issues on appeal, the appellants, Control Works, Elsa Cantu-Rios, and Myla Cantu, challenge (1) the jury's findings on alter-ego and fraudulent transfer, (2) the exemplary damages assessed against Control Works and Elsa, and (3) the jury's finding that the property subject to the fraudulent transfer claim was not Elsa's homestead.

## BACKGROUND

The following is this Court's recitation of facts in a previous suit between Tony Cantu and Jack Seeman:

> On March 9, 2007, Tony Cantu filed suit in County Court against his neighbor, Jack Seeman, alleging intentional infliction of emotional distress, libel and slander, sexual harassment, stalking, assault, conspiracy, and malicious prosecution. The crux of Cantu's allegations against Seeman was that Seeman was obsessed with Cantu's wife, Elsa, that he stalked her, harassed her by giving her gifts, and spied on her. Cantu further alleged that as a result of this obsession, Seeman hated Cantu and made false reports to the police about him, threatened him, and damaged his property.

*Cantu v. Seeman*, No. 01-09-00545-CV, 2012 WL 1564536, at *1 (Tex. App.—Houston [1st Dist.] May 3, 2012, pet. denied). On February 11, 2009, the jury returned a verdict in favor of Seeman, and the trial court entered a $300,000 judgment in Seeman's favor.

On February 12, 2009, one day after the jury verdict referenced above, Elsa, purportedly acting on behalf of Control Works, transferred real property titled in Control Works's name and located at 1314 Longdraw Drive, Katy, Texas ["the Katy

2

Property"], to herself, individually. A few days later, Elsa filed a "corrected deed" that was backdated two years; she also filed a designation of homestead that was backdated two years. Elsa testified that the deeds were not an attempt to defraud Tony's creditors, but were to reduce her tax burden by designating the Katy Property as her homestead.

In 2009, Seeman sought to execute on the judgment by obtaining orders for Tony to turnover all stock ownership in Control Works. This Court affirmed the turnover order. *Id.* at *4.

On February 17, 2010, Control Works brought the present lawsuit, seeking to enjoin Seeman from obtaining the shares of stock that he was awarded in the turnover order. Seeman counterclaimed against Control Works and filed a third-party petition against Elsa and Myla, contending that Tony, acting through his alter ego, Control Works, had fraudulently transferred property to them to avoid paying Seeman his $300,000 judgment. Control Works did not pursue its injunctive relief, and the case went to trial on Seeman's claims.

At trial, Elsa claimed that she and Tony were not the owners of Control Works, but that, since the time of its incorporation in 1997, its shares were owned by Tony's parents, who gave him $20,000 to start the consulting firm, and that he and Elsa were merely employees of Control Works. No such stock certificates were

3

admitted at trial. In contrast, Seeman presented evidence that, during years of previous litigation, Tony had claimed to own Control Works.

After a four-day jury trial, the jury returned a verdict finding that: (1) Tony fraudulently transferred his ownership interest in Control Works to his mother, Myla, (2) the value of the fraudulently transferred interest in Control Works was $236,020, and (3) Control Works was responsible for the conduct of Tony. The jury also found that (4) Control Works fraudulently transferred the Katy Property to Elsa, and (5) the value of the fraudulently transferred Katy Property was $235,020. The jury further determined that (6) the Katy Property was not the homestead of Elsa. Finally, the jury found that (7) harm to Seeman was caused by Control Works' and Elsa's malice and (8) assessed $225,000 in exemplary damages against both Control Works and Elsa.

Based on the jury's verdict, the trial court entered a final judgment that:

(1)    ordered that the transfer of the Katy Property from Control Works to Elsa was null and void;

(2)    ordered that the corrected warranty deeds purporting to transfer the Katy Property from Control Works to Elsa were null and void;

(3)    ordered that the transfer of the ownership interest in Control Works from Cantu to his mother, Myla, was null and void;

(4)    ordered that the ownership interest in Control Works, Inc. was vested in Seeman and his attorneys;

(5)    ordered Elsa to deliver to Seeman's attorneys all of Control Works' books and records;

4

(6)     ordered that all transfers of assets made by Control Works after January 12, 2017 [the date of the trial court's verdict] were null and void;

(7)     ordered that the District Clerk issue a writ of possession to Control Works and its transferees, Seeman and his attorneys;

(8)     ordered that Control Works is jointly and severally liable to Seeman for the $300,000 judgment in the previous lawsuit;

(9)     ordered that Control Works was permanently enjoined from transferring any of its assets to anyone other than Seeman; and

(10)   awarded Seeman $225,000 in exemplary damages from both Elsa and Control Works, plus pre- and post-judgment interest and costs.

Control Works, Elsa, and Myla timely filed notices of appeal.  Seeman did not file a notice of appeal.

## ISSUES

Appellants bring five issues on appeal, many with sub-points, which we will attempt to discuss respectively.

1.  ***"The Judgment Cannot Stand Because Appellants Were Not Debtors to Appellee Seeman."***

In their first issue, appellants argue that "[t]he Texas turnover statute cannot be used as a vehicle to hold Control Works liable for the debts of Tony Cantu." Appellants also argue that Elsa and Myla "were never judgment debtors to Appellee" and that "a turnover order is inappropriate where a judgment creditor attempts to

relieve a third party corporation of property without first successfully piercing the corporate veil in a separate trial."

The verdict in this case, however, was not based on the Texas turnover statute. Instead, Seeman obtained jury findings that Control Works was the alter- ego for Tony, and that Control Works, as Tony's alter-ego, fraudulently transferred corporate property to his wife and mother.

Because the turnover statute had nothing to do with the judgment entered in this case, we overrule appellants' first issue on appeal.

Appellants' first issue also appears to challenge the factual sufficiency of the evidence to support the jury's alter-ego findings. To the extent that it does so, that issue is waived because it was not raised in appellants' motion for new trial. *See* TEX. R. CIV. P. 324 (b)(2) ("A point in a motion for new trial is a prerequisite to the following complaints on appeal: . . . [a] complaint of factual insufficiency of the evidence to support a jury finding.").

2. "**The Evidence Does Not Support the Piercing of the Corporate Veil because Appellants Were Not Judgment Debtors to Appellee As Required Under the Alter Ego/Reverse Piercing Doctrine.**"

In their second issue on appeal, appellants argue that "the jury verdict cannot stand against Control Works under the reverse piercing alter/ego doctrine because Appellants neither had preexisting personal liability to [Seeman]." Appellants argue in sub-point one, without authority, that Control Works, Elsa, and Myla had to be

6

judgment debtors to Seeman before the judgment could "undo" the transfers to them that Tony, acting through his alter ego, caused.

Appellants misapprehend the nature of this case. Here, the jury found that Tony fraudulently transferred property to his wife and mother. Because the transfers were purported to have been made by Control Works, the alter-ego findings necessarily show that the transfers were actually attributable to Tony. The alter-ego findings and the fraudulent-transfer findings operate in conjunction to establish Seeman's right to recover the properties transferred by Tony, but the judgment is based on the fraudulent transfers.

There is no requirement that transferees in a fraudulent transfer case be judgment debtors of the party seeking to invalidate the transfer. *See Sargeant v. Al Saleh*, 512 S.W.3d 399, 415 (Tex. App.—Corpus Christi 2016, no pet.) (holding that claim under Texas Uniform Fraudulent Transfer Act "need not be against the debtor only . . . but can also be against the transferee of an asset or the person for whose benefit the transfer was made").

Accordingly, we overrule the first sub-point of issue two.

In the second sub-point of issue two, appellants contend that the evidence does not support the alter-ego findings "because there was never a jury finding that Dr. Cantu had any ownership interest in Control Works." In jury questions 1-3, the jury was asked, "Did Tony Cantu fraudulently transfer his ownership interest in Control

7

Works to either of the Parties listed below?" Appellants claim on appeal that these questions improperly assume that Tony had an interest in Control Works to transfer and that there is "no finding as to whether Dr. Cantu had an ownership interest in Control Works." However, appellants did not object to this alleged omission from the charge. Failure to timely object to error in a jury charge constitutes a waiver of that error. TEX. R. CIV. P. 272. "Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." TEX. R. CIV. P. 274; *see Burbage v. Burbage*, 447 S.W.3d 249, 255–58 (Tex. 2014) (holding party waives any objection to jury charge by failing to raise specific objection to proposed submission); *Hamid v. Lexus*, 369 S.W.3d 291, 296 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (same).

Accordingly, we overrule the second sub-point of issue two.

In their third sub-point of issue two, appellants contend the trial court erred in admitting Seeman Exhibit 25—a statement made by counsel in a motion that "[w]e will concede that Tony Cantu as an officer of the Corporation could be categorized as 'an owner of a beneficial interest in shares, or an affiliate of an owner, or subscriber of the corporation.'"

To obtain a reversal based on an error in the admission of evidence, an appellant must show that the trial court's ruling was erroneous and the error was calculated to cause and probably did cause the rendition of an improper judgment.

8

TEX. R. APP. P. 44.1(a); *Interstate Northborough P'ship*, 66 S.W.3d 213, 220 (Tex. 2001).

Appellants' appellate brief makes no attempt to show that the admission of State's Exhibit 25 probably caused the rendition of an improper judgment. Indeed, State's Exhibit 25 was cumulative of other evidence that was presented at trial that Tony operated Control Works as if it were his own business, and testified to as much in his previous lawsuit. The business was run out of his home, which the corporation paid for and owned, and the telephone number for the business was Tony's private cell phone. There were no stock certificates to corroborate Elsa's and Myla's testimony that Myla alone owned the business. Thus, the admission of Seeman's Exhibit 25, even if erroneous, probably did not cause the rendition of an improper judgment because it was cumulative of other evidence presented regarding Tony's ownership of the corporation.

Accordingly, we overrule the third sub-point of issue two.

In their fourth sub-point of issue two, appellants contend that "the evidence does not support the piercing of the corporate veil against Control Works because the relationship between CWI and Dr. Cantu was not the sort that would justify piercing the corporate veil." In their fifth sub-part of issue two, appellants contend that "the evidence does not support the piercing of the corporate veil against Control Works because the evidence does not support a finding that Dr. Cantu used Control

9

Works as a sham to perpetrate a fraud." We interpret these sub-points as factual sufficiency challenges[1] to the jury's answer to question no. 5, which asked the jury to determine whether Control Works was responsible for the conduct of Tony.

We reject these arguments for two reasons. First, as mentioned earlier, appellants did not allege factual insufficiency in their motion for new trial, thus the issue is waived. *See* TEX. R. CIV. P. 324 (b)(2) ("A point in a motion for new trial is a prerequisite to the following complaints on appeal: . . . [a] complaint of factual insufficiency of the evidence to support a jury finding.").

Second, jury question no. 5 instructed the jury on five circumstances under which Control Works could be responsible for the conduct of Tony, but appellants' brief attacks only two of those reasons, i.e, that the unity between Control Works and Tony was such that the separateness of Control Works had ceased, and that Tony used Control Works as a sham to perpetrate a fraud. Even were we to agree that the evidence is insufficient on these two issues, by failing to attack the other three grounds in the jury charge, appellants' challenge to jury question no. 5 necessarily fails. *See Creech v. Columbia Med. Ctr. of Las Colinas Subsidiary, L.P.*, 411 S.W.3d 1, 6 (Tex. App.—Dallas 2013, no pet.) ("An appellant must attack all independent

---

[1]     Appellants' brief does not specify whether they are bringing a factual or legal sufficiency challenge. However, because the brief discusses only the standard of review for a factual sufficiency challenge, we interpret the brief as alleging factual insufficiency.

10

bases or grounds that fully support a judgment."); *Kasper v. Meadowwood Ranch Estates, Inc. Prop. Owners Ass'n*, No. 05–07–00982–CV, 2008 WL 3579379, at *2 (Tex. App.—Dallas Aug. 15, 2008, no pet.) (mem. op.) (affirming because appellants inadequately briefed their challenge to one independent basis for judgment).

Accordingly, we overrule appellants' fourth sub-point of issue two.

We overrule issue two in its entirety.

### 3. *"The Fraudulent Transfer Act Does Not Apply"*

In their third issue on appeal, appellants contend the Fraudulent Transfer Act does not apply because (1) Control Works, Elsa, and Myla were not "debtors" as defined by the act and are not subject to the act, and (2) the four-year limitations provision in the act had run. We address each argument respectively.

Appellants first argue that the Fraudulent Transfer Act cannot apply to the sale of the home or the stock because Control Works, Elsa, and Myla were not judgment debtors of Seeman. We have already addressed this contention in issue one, holding that there is no requirement that transferees in a fraudulent transfer case be judgment debtors of the party seeking to invalidate the transfer. *See Sargeant*, 512 S.W.3d at 414 (holding that claim under Texas Uniform Fraudulent Transfer Act "need not be against the debtor only . . . but can also be against the transferee of an asset or the person for whose benefit the transfer was made").

11

Accordingly, we overrule sub-point one of issue three.

Appellants also argue that the Fraudulent Transfer Act does not apply "because the statute of limitations has run." We note that Section 24.010 is actually a statute of repose, not a statute of limitations. *Cadle Co. v. Wilson*, 136 S.W.3d 345, 350 (Tex. App.—Austin 2004, no pet.). But, like limitations, a statute of repose is an affirmative defense. *Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 416 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (observing that statute of repose operates as affirmative defense on which defendant bears burden of proof); *see also Woods v. William M. Mercer, Inc.* 769 S.W.2d 515, 517 (Tex. 1988) (holding statute of limitations is affirmative defense). The defendant bears the initial burden to plead, prove, and secure findings to sustain its affirmative defense. *Id.* The failure to request a jury instruction on an affirmative defense results in waiver of that ground by the party relying on it, unless it was conclusively established. *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 632 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

Here, appellants neither requested a jury instruction on the statute of repose, nor established the defense as a matter of law. Tony claimed that he transferred his entire interest in Control Works to his parents in 1997, and that all subsequent transfers were by Control Works, not by him acting through Control Works, because Cantu no longer had an ownership interest in the company. Thus, appellants contend

that the relevant transfer from whence all the other transfers flow is the alleged 1997 stock transfer, which was time-barred.

However, the jury heard conflicting evidence regarding Tony's ownership position in Control Works and could have disbelieved his claim that his parents were the actual owners of the company since 1997.

As such, appellants did not prove that the statute of repose applied as a matter of law. We overrule sub-part two of issue three.

We overrule issue three in its entirety.

4. ***"Whether the Evidence is Sufficient to Support the Jury's Findings as to Actual and Exemplary Damages"***

In issue four, appellants contend that (1) there is no evidence of exemplary damages, (2) there is no evidence of malice to support the exemplary damages, and (3) the damages are constitutionally excessive.[2]

In sub-point one, appellants seem to argue that, because there is no evidence of the value of the Katy Property and of the ownership interest in Control Works at the time they were fraudulently transferred, there are no damages upon which to base the exemplary damages.

---

[2]      Appellants did not object to the submission of the exemplary damages question, nor do they claim on appeal that exemplary damages are not available under the Fraudulent Transfer Act against transferees. Thus, we do not reach those issues in this case.

13

However, the value assigned to the Katy property by the jury was $235,020, which is the exact appraised value assigned to the property by the Fort Bend County Appraisal District in 2009, and admitted into evidence without objection. Thus, there is legally sufficient evidence to support the jury's answer to jury question no. 9, which asked the jury to determine the value of the Katy Property that was fraudulently transferred. And, the jury determined that the value assigned to the ownership interest in Control Works that was fraudulently transferred was $236,030. This amount is consistent with the evidence that Control Works' main asset was the Katy Property, and that at the time of the transfer, Control Works also owned a car and a van. Thus, there is legally sufficient evidence to support the jury's answer to jury question no. 4, which asked the jury to determine the value of the ownership interest in Control Works that was fraudulently transferred.

Accordingly, we overrule appellants' first sub-point of issue four.

In sub-point two, appellants contend there is no evidence to support the jury's finding in jury question no. 11 that there was clear and convincing evidence that the harm to Seeman was caused by Control Works' and Elsa's acting with malice.

*Control Works*

Pursuant to Texas Civil Practices and Remedies Code, "exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that

14

the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud, (2) malice, or (3) gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.003(a) (West 2015). In this sub-point, Control Works challenges only the sufficiency of the evidence to support malice; it does not challenge the sufficiency of the evidence to support fraud, which is an independent basis to support the award of exemplary damages against it. *See Horizon Health Corp. v. Acadia Healthcare Co., Inc*, 520 S.W.3d 848, 867 (Tex. 2017) (noting that harm caused by submitting improper expense reports was challenged on malice, but not fraud, which was independent basis for recovery of exemplary damages).

In addition to the malice finding in jury question number 11, the jury also found in response to jury questions 6, 7, and 8 that Control Works fraudulently transferred[3] the Katy Property to Elsa. Because Control Works does not challenge the fraudulent transfer finding in jury questions 6, 7, and 8—an independent ground for recovery of exemplary damages—we overrule sub-point two as it relates to Control Works.

We overrule sub-point two as it relates to Control Works.

> *Elsa Cantu-Rios*

---

[3]     A fraudulent transfer case can, with clear and convincing evidence, support an award of exemplary damages. *See Stokes v. Ferris*, No.03-02-00802CV, 2004 WL 1065756, *8–9 (Tex. App.—Austin May 13, 2004, pet. denied) (mem. op.) (holding that clear and convincing evidence that defendant violated fraudulent transfer statute supported award of exemplary damages).

Because there is no fraudulent conveyance finding against Elsa, individually, the exemplary damages are necessarily based on the malice finding in jury question no. 11. Thus, we turn to her complaint that the evidence is legally and factually insufficient to support the malice finding.

To recover exemplary damages based on Elsa's malice, Seeman had to prove actual damages and submit clear and convincing evidence of outrageous, malicious, or otherwise reprehensible conduct. *See Horizon Health*, 520 S.W.3d at 867. He was also required to prove that Elsa specifically intended for him to suffer substantial injury that was "independent and qualitatively different" from the compensable harms associated with the underlying cause of action, i.e., fraudulent transfer. *See id.*

Here, the jury charge defined "malice" as "a specific intent by [Control Works or Elsa Cantu-Rios] to cause substantial injury or harm to Jack Phillip Seeman." The jury heard evidence that Elsa, acting on behalf of Control Works, transferred the Katy Property from Control Works to herself just one day after a jury returned a substantial verdict against her and Tony. Both she and Tony together went to register the deed. Although Elsa claimed that the transfer was so that she could receive favorable tax treatment, the jury could have considered the timing of the transfer as evidence of her fraudulent intent, both as the transferor and transferee. Although Myla testified that she, as owner, gave Elsa permission to make the transfer, a board

16

resolution authorizing the transfer was dated a year later, which could indicate to the jury that the board resolution, and Myla's purported permission, were created after the fact. And, not only did Elsa transfer the property to herself one day after the adverse judgment, shortly thereafter, she filed a "corrected" deed and designation of homestead that were backdated two years. From this, a jury could have concluded that Elsa's attempts to have the Katy Property as her homestead were merely attempts to protect the property from Seeman's reach so that he could not use it to satisfy his judgment.

While this evidence would support a finding that Elsa fraudulently transferred property, it is not evidence that she intended to cause Seeman a substantial injury independent and qualitatively different from the compensable harms associated with the fraudulent transfer. Because the record contains no evidence of an intent on Elsa's part to inflict substantial injury independent and qualitatively different from the compensable harms associated with the fraudulent transfer, the evidence is legally insufficient to support the jury's award of exemplary damages against her. *See Horizon Health*, 520 S.W.3d at 867.

As such, there is no evidence from which the jury could have reasonably concluded that Elsa acted with malice.

Accordingly, we sustain sub-point two as applied to Elsa.

17

In sub-point three, appellants contend that the $225,000 in exemplary damages that the jury awarded against each Elsa and Control Works are unconstitutionally excessive. We disagree. Although no money damages were awarded, Seeman did recover equitable relief, i.e., a declaration that the transfers of the Katy Property and Tony's interest in Control Works were null and void. An award of equitable relief can support an award of exemplary damages. *See, e.g.*, *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 904 (Tex. 1985) (holding that when "equity requires the return of property, this 'recovery of the consideration paid as a result of fraud constitutes actual damages and will serve as a basis for the recovery of exemplary damages'")

And, the jury determined the value of the properties upon which the equitable relief was granted, i.e., $235,020 for the Katy Property and $236,020 for the interest in Control Works. The awards of exemplary damages—$225,000 against both Elsa Cantu and Control Works—fall within the limits imposed by the Texas Damages Act. *See* TEX. CIV. PRAC. & REM. CODE § 41.008(b) (West 2015) (permitting exemplary damages double that of economic damages).

"[T]he constitutionality of exemplary damages is a legal question for the court." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 307 (Tex. 2006). "In reviewing the amount of an exemplary damage award for constitutionality, we . . . consider three 'guideposts': (1) the nature of the defendant's conduct, (2) the ratio

18

between exemplary and compensatory damages, and (3) the size of civil penalties in comparable cases." *Id.* at 308.

Regarding the first guidepost—Elsa, on behalf of Control Works (which the jury found was the alter ego of Tony Cantu), transferred the Katy Property to herself just one day after Seeman obtained a judgment against them. Several days later, Elsa, again acting on behalf of Control Works, filed a "corrected" deed and a designation of homestead that were backdated two years. As discussed above, the evidence supports a finding that these transfers were fraudulent and constituted an attempt to prevent Seeman from executing on his judgment against them.

Regarding the second guidepost—the ratio of exemplary damages to the available economic damages—was less than one-to-one. Smaller ratios, such as those here, are more likely to comport with due process than larger ratios. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 581, 116 S. Ct. 1589, 1602 (1996).

Regarding the third guidepost—the size of civil penalties in comparable cases—we are instructed to compare the exemplary damages with legislatively authorized civil penalties in comparable cases. *Bennett v. Grant*, 525 S.W.3d 642, 650–51 (Tex. 2017). Neither party argues that there are any similar legislatively authorized civil penalties.

Considering the three guideposts, we conclude that the amount of exemplary damages awarded in this case is not constitutionally infirm.

Accordingly, we sustain issue four as it relates to the exemplary damages against Elsa. We overrule issue four in all other respects.

5. ***"Whether Else Cantu's Designation of Homestead Precludes Enforcement of the Fraudulent Transfer Act"***

In jury question no. 10, the jury was asked:

Was the Katy Property the homestead of Elsa Cantu-Rios on February 16, 2009?

A homestead is the dwelling house constituting the family residence, together with the land on which the dwelling house is situation. To establish that the Katy Property was her homestead on February 16, 2009, Elsa Cantu-Rios must show:

1) She was an owner of the Katy Property,
2) She intended that the Katy Property to be her homestead, and
3) An overt act consistent with such intent.

Answer "Yes" or "No."

Answer: No

In issue five, appellants contend that the evidence is factually insufficient to support the jury's negative finding on this issue. However, appellants' motion for new trial did not attack the factual sufficiency of the answer to jury question no. 10, thus the issue is waived. *See* TEX. R. CIV. P. 324(b)(2) ("A point in a motion for new trial is a prerequisite to the following complaints on appeal: . . . [a] complaint of factual insufficiency of the evidence to support a jury finding.").

20

Further, the jury's finding that the property was fraudulently transferred to Elsa negates the first element Elsa was required to show to claim a homestead, i.e., that she was an owner of the Katy Property.

Accordingly, we overrule issue five.

### 6. *Seeman's Cross-Point*

Seeman, by way of a cross-point on appeal, contends that the trial court "is obliged to take all necessary action to enforce the final judgment, including issuing a writ of attachment for Elsa Cantu." Specifically, Seeman contends that the trial court will not hold Elsa in contempt of court for allegedly destroying the property that is the subject of this lawsuit because she has not been personally served with the contempt order, "allowing her to deliberately evade over 40 attempts to serve her with the order." However, Seeman has not filed a notice of appeal. Any party "who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal." TEX. R. APP. P. 25.1(c). Because Seeman has not done so, we dismiss his sole issue on appeal.

### CONCLUSION

We reverse the portion of the judgment assessing exemplary damages against Elsa and render judgment that Seeman take nothing on his claim for exemplary

21

damages against Elsa.  Except as hereinabove reverse and rendered, we affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.